**HARPER OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**No. 6316.**

United States Court of Appeals
Tenth Circuit.

Nov. 12, 1960.

T. Murray Robinson, Oklahoma City, Okl., for petitioner.

Peter H. Schiff, Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Howard E. Wahrenbrock, Sol., and Robert L. Russell, Asst. Gen. Counsel, Washington, D. C., on the brief), for Federal Power Commission.

C. H. Mullendore, Jr., Oklahoma City, Okl. (C. C. Mount and Charles V. Wheel-

er, Oklahoma City, Okl., on the brief), for intervenor.

Before HUXMAN, LEWIS and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

Harper Oil Company[1] has appealed from an order of the Federal Power Commission denying it permission to abandon sales of natural gas to Cities Service Gas Company.[2] Appeal to this court is authorized under the provisions of Section 19 of the Natural Gas Act (15 U.S.C.A. § 717r).

Harper is an independent producer of natural gas in Oklahoma County, Oklahoma. In 1953, Harper, then Harper-Turner Oil Company, contracted to deliver to Cities Service merchantable natural gas at a pressure of 500 pounds per square inch for 6 cents per thousand cubic feet (M. c. f.). This contract was to expire January 1, 1958. Title to the gas leases involved was transferred to appellant from Harper-Turner in 1954, Harper assuming the Cities Service contract. Gas sold Cities Service by Harper is produced and delivered at three separate locations. Two of these deliveries are direct wellhead connections with Cities Service line. Harper does not desire to abandon these sales. The delivery which Harper seeks to terminate is that which emanates from its Edmond Gasoline Plant where operations were commenced late in 1956. There gas from Harper's gathering lines is compressed and dehydrated, the liquid hydrocarbons being removed, with roughly half of the residue compressed to 500 pounds per square inch and discharged into the Cities Service connecting line. The other half is further compressed for injection into Harper's oil reservoir in a sweeping process which forces to the surface additional liquid hydrocarbons.

In contemplation of the 1958 expiration of the Cities Service contract, Harper negotiated a contract with the Oklahoma Resources Development Company to sell the gas currently delivered to Cities Service from the Edmond plant at 11 cents per Mcf. This second contract calls for Harper to deliver the residue gas at only 370 pounds per square inch, the pressure at which it is normally discharged from the extraction process. This arrangement would allow Harper to employ elsewhere the power currently utilized to boost the gas pressure to the 500 pounds per square inch required to enter the Cities Service line.

Pursuant to this local contract, Harper applied to the Commission on February 6, 1958, for authority to abandon delivery to Cities Service of gas discharged from its Edmond gas plant. This application was under 7(b) of the Natural Gas Act (15 U.S.C.A. § 717f(b)) which allows discontinuance of service only if the available supply of natural gas is depleted or the present or future public convenience or necessity permit. In its application, Harper alleged that the present and future public convenience would be better served by allowing a cessation of its sales to Cities Service in that the gas would still be consumed by the public, but the power freed under the local contract could be used to recover currently wasted low pressure gas. Cities Service was allowed to interplead at the hearing on Harper's application.

The evidence adduced before the examiner was concerned primarily with two questions: (1) The validity of Harper's claim that the abandonment would result in considerable conservation of gas supplies which would otherwise be wasted. (2) Whether Cities Service actually has a need for gas supplied by Harper. The examiner found that Harper presently had sufficient unused power in its extraction plant to carry on the contemplated conservation procedures under the Cities Service obligation if it chose to apply it to that purpose. He also found that Cities Service had a true need for Harper's gas to make up deficiencies in that particular portion of the line during the winter months of peak consumption. The examiner therefore concluded that the

---

1. Herein called Harper.

2. Herein called Cities Service.

abandonment sought by Harper would be primarily for its own economic benefit and not in the interest of public convenience and necessity. The commission adopted the Examiner's conclusions and denied Harper's application for authority to abandon its service to Cities Service. Harper's timely application for rehearing was denied and this appeal followed.

On appeal Harper raises two issues. (1) Can the Federal Power Commission compel an independent producer of gas to continue a sale to an interstate pipeline where the sale was commenced under a short-term contract that has since expired? (2) Was the Commission's order denying Harper authority to abandon delivery unsupported by substantial evidence on the record because of the failure of the Commission to give proper weight to the public interest in conserving natural resources and because the gas supply at issue is not necessary to the maintenance of Cities Service's obligations to the public?

■■ In substance, appellant's first contention is that the Commission's jurisdiction over it terminated with the 1958 expiration of the Cities Service contract and therefore Harper was free to discontinue its sales to the transmission company at will. The decision of the Supreme Court in Sunray Mid-Continent Oil Co. v. Federal Power Commission, 364 U.S. 137, 156, 80 S.Ct. 1392, 1403, 4 L.Ed.2d 1623, answers this question contrary to Harper's contention. The precise question was before the court in that case. In disposing of it, the court said:

"An initial application of an independent producer to make movements of natural gas in interstate commerce, leads to a certificate of public convenience and necessity under which the Commission controls the basis on which 'gas may be initially dedicated to interstate use.

Moreover, once so dedicated there can be no withdrawal of that supply from continued interstate movement without Commission approval.' "

It would thus seem clear that when once an independent producer of gas has dedicated his production to interstate commerce and thereby has come under the jurisdiction of the Commission, he remains thereunder so long as production continues.[3]

Harper in its second contention, in effect, asks us to find that as a matter of law the Commission erred in its finding that the present and future public convenience and necessity do not permit appellant to abandon its service to Cities Service because there is no substantial evidence to support its findings.

■ We find no quarrel with appellant's basic premise that there is a public interest in the conservation of our natural resources. Nor do we take issue with its position that the conservation factor should be considered by the Commission as one of the elements in a determination of whether the public convenience and necessity will be served by abandonment of a sale. Such a consideration is required by the decisions.[4] But the record shows that the Commission did consider the conservation ramifications involved in its discontinuance of the sale to Cities Service. The Commission heard the conservation evidence set forth by Harper, but found it lacking when balanced against the public interest in a constant and reliable service from the interstate transmission companies.

The conservation Harper contends for so strenuously amounts to the redistribution of some 57 brake horsepower from the exhaust end of the plant to the intake side. Appellant estimates that 370 Mcf of currently unrecoverable low pressure gas could be gathered daily through this rearrangement of its facility. But the record also shows that Harper's plant

3. See also: Sun Oil Co. v. F. P. C., 364 U.S. 170, 80 S.Ct. 1388, 4 L.Ed.2d 1639.

4. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333.

has a horsepower rating of 235 h. p. more than is presently in use. Why this power cannot be employed to accomplish the desired recovery of low pressure gas while maintaining the service to Cities Service is not shown.

Harper also alleged in support of its application that Cities Service does not need the gas it delivers. To support this allegation, it introduced in evidence an application by Cities Service to the Power Commission for permission to sell 25,000,000 cubic feet of gas per day to Transwestern Pipe Line Company. The record shows, however, that these sales were to be made from the western end of Cities Service's pipeline on an interruptible basis. Cities Service's Vice President testified that his company needs Harper's gas primarily to alleviate the deficiencies it experiences during the winter months of peak consumption. The record also shows that appellant's gas entered Cities Service's "South of Blackwell" system which shows considerable deficiencies on peak days, whereas, the sale to Transwestern will be made from the Oklahoma-Hugoton Field where the transmission company has excess allowables. On peak days even with the lines from this area operating at absolute capacity, the deficiency in line serviced by Harper cannot be made up. For this reason, Harper's small quantity of gas assumes considerable importance.

Harper attempts to show the inconsequential nature of its contribution to Cities Service system by means of percentages. It supplies roughly 4/10 of one per cent of Cities Service's gas. As pointed out above, it is not the quantity so much as the crucial location of Harper's delivery that Cities Service deems important in maintaining an adequate service to the public. The facts in the case of P. R. Rutherford, 23 FPC, 357, cited by Harper to support its argument of minimal contribution, are materially different from those in this case. There

the pipeline company had not used any of the producer's gas for over two years, and made no effort to prevent the abandonment.

 It is well settled that where Congress has delegated primary jurisdiction in a given field to an Administrative body, the jurisdiction of a court in reviewing its proceedings is limited to determining whether there is in the record substantial evidence to support its findings and conclusions.[5] A consideration of the entire record leads us to conclude that the Commission's findings and conclusions find support in the record and that the order appealed from should be, and is hereby affirmed.

5. Michigan Consolidated Gas Co. v. F. P. C., 3 Cir., 246 F.2d 904; State Corporation Commission, Kansas v. F. P. C., 8 Cir., 206 F.2d 690; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; See § 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), note 9.