**JICARILLA APACHE TRIBE, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 77–1005.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 29, 1977.
Decided June 26, 1978.

Terry D. Farmer of Nordhaus, Moses & Dunn, Albuquerque, N.M., for petitioner.

Joseph G. Stiles, Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol., and Thomas M. Walsh, Atty., Washington, D.C., for respondent Federal Energy Regulatory Commission.

Before SETH, Chief Judge, LEWIS, Circuit Judge, and BRIMMER,* District Judge.

\* Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. A small producer is defined generally as an independent producer of natural gas whose sales in interstate commerce did not exceed

LEWIS, Circuit Judge.

The Jicarilla Apache Tribe (the Tribe) has petitioned this court to review two orders of the Federal Energy Regulatory Commission (FERC). The initial order and the order denying rehearing were issued on October 4 and December 3, 1976, respectively, in response to the Tribe's application for a "small producer" certificate to authorize sales of natural gas to pipeline companies. The denomination as a small producer[1] exempts an independent producer from many of the filing requirements under the Natural Gas Act, 15 U.S.C. §§ 717–717w, and normally allows the producer to charge a higher rate for its gas than that allowed to large gas producers. 18 C.F.R. § 157.40.

The Tribe applied for the certificate because it wished to sell for resale in interstate commerce royalty gas produced from wells on its reservation in New Mexico. The wells are located on land leased to El Paso Natural Gas Co. and Northwest Pipeline Corp. The leases[2] contain royalty provisions allowing the Tribe to take cash in payment or, on 30 days notice, to take payment in kind. It was the Tribe's election to take its royalty in kind which was the genesis of this appeal. The Tribe intended initially (for about 18 months) to sell all of its royalty gas to El Paso and Northwest for resale in interstate commerce. Ultimately, however, the Tribe intended to use most of the gas for its own industrial needs on the reservation, selling only the amount unused to El Paso and Northwest on a day-to-day basis. The Tribe's application for a certificate to authorize the sale of their gas was required under provisions of the Natural Gas Act. 15 U.S.C. §§ 717a(6), 717f(c).

In the orders under review the FERC granted the Tribe a small producer certificate but restricted the price which could be

10,000,000 mcf (thousand cubic feet) at 14.65 p.s.i.a. during any calendar year.

2. The leases involved are on standard government form 5–157 (7/64) distributed by the Bureau of Indian Affairs for oil and gas leases covering tribal lands.

charged for the royalty gas to the lower rate applicable to large producers. The FERC further held that the Tribe would have to obtain abandonment authorization pursuant to 15 U.S.C. § 717f(b) before it could remove the royalty gas from the interstate market and apply it to their own industrial needs. The Tribe objects to both of these requirements ōn appeal.

## I. Abandonment Authorization

[1, 2] Under 15 U.S.C. § 717f(b), no natural gas company may abandon all or any portion of any source rendered by means of facilities subject to the jurisdiction of the FERC without Commission approval. This provision has been most recently construed by the Supreme Court in *California v. Southland Royalty Co.*, —— U.S. ——, 98 S.Ct. 1955, 56 L.Ed.2d 505, a case which is directly relevant to the issue before us. *Southland Royalty* restated the established rule that once natural gas is "dedicated" to interstate commerce under a certificate of public convenience and necessity, that gas may not be withdrawn from the interstate market without prior Commission approval. 98 S.Ct. at 1958, *citing Sunray Mid-Continent Oil Co. v. FPC*, 364 U.S. 137, 156, 80 S.Ct. 1392, 4 L.Ed.2d 1623. The Tribe asserts this rules is inapplicable in this case because their royalty gas has never been dedicated to the interstate market. Their argument is premised on the fact that they reserved the option to take their royalty in kind in the lease. El Paso and Northwest, being at all times subject to this provision as lessees, had no legal power to dedicate this gas to interstate commerce. This argument is made despite the fact that all the gas produced from the wells is either sold, or commingled with gas being sold, interstate by El Paso and Northwest under FERC certificate.

■ We believe the Supreme Court's opinion in *Southland Royalty, supra*, re-

quires rejection of the Tribe's arguments. The respondents in *Southland* made the identical claim as is made by the Tribe in this case, that is, " 'no man can dedicate what he does not own.' " 98 S.Ct. at 1960. The Supreme Court rejected this argument on the grounds that "dedicating gas to the interstate market . . . does not effect a gift or even a sale of that gas, but only changes its regulatory status." *Id.* (footnote omitted). The basic thrust of the Court's opinion was that the service obligation imposed by the Natural Gas Act is paramount to any private contractual arrangement. This obligation, once imposed, requires the flow of gas to the interstate market until abandonment authorization has been obtained. *Id.* at 1958.[3] We hold that the FERC did not err in that portion of its ruling regarding abandonment.

## II. Price Ceiling

■ Under applicable FERC regulations, a small producer is allowed to charge a higher price for its gas than the price ceiling set by the Commission for large producers. 18 C.F.R. § 157.40(c). The higher rates are in recognition of the generally higher risks, higher costs, and lower production of the small company. *See generally FPC v. Texaco Inc.*, 417 U.S. 380, 94 S.Ct. 2315, 41 L.Ed.2d 141. In anticipation of potential abuse, however, the FERC provided that the higher rates would not be available to a small producer whose gas reserves "were acquired by the *purchase* of developed reserves in place from a large producer." 18 C.F.R. § 157.40(c) (emphasis added). In the order before us the FERC held that the Tribe's election to take their royalty payments in kind rather than in cash was "tantamount to a purchase" of the gas from El Paso and Northwest within the meaning of § 157.40, thus disqualifying the Tribe from the small producer rates. With all due deference to the Commission's interpretation, we must disagree.

**3.** We do note one difference between *Southland Royalty* and the case before us. The lessors in *Southland* did not reserve the right to take their royalty in kind. *Id.* at 1962, n.5 (Stevens, J., dissenting). This point does not support a different result. The fact remains that *all* of the gas covered by the lease here was initially dedicated to the interstate market. For the reasons stated above, any subsequent withdrawal by the Tribe, even by exercise of their reserved option, requires abandonment authorization.

292

The provisions of the lease involved in this case are not disputed. The Tribe was to be paid a royalty of 1/6th of the value or amount of all gas produced on the leased property. Section 4 of the lease provided:

The lessor expressly reserves:

.  .  .  .  .

(c) Royalty in kind—The right to elect on 30 days' written notice to take lessor's royalty in kind.

We believe this express reservation of the unqualified right to take royalty in kind precludes a conclusion that the Tribe has in any way "purchased" this gas. We do not agree with the FERC's characterization of the election as an exchange of cash for gas. There is no exchange involved here at all, much less an exchange which could reasonably be deemed a purchase as that term is commonly understood. The Tribe was simply exercising its right to choose one means of payment over another.

Although we need not, and do not, base our decision on state law concepts of property interests created by oil and gas leases, we do find persuasive support from a number of cases discussing such interests. *See Waggoner Estate v. Wichita County*, 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566; *Henley v. United States*, 396 F.2d 956, 972–75, 184 Ct.Cl. 315. *Thompson v. Thompson*, 149 Tex. 632, 236 S.W.2d 779, 784–85. In *Waggoner*, a state tax case, the Supreme Court decided that a lessor's reserved right to receive a portion of the oil produced on the leased property as royalty was properly taxed as real property. The Court could find no basis in the lease provisions for concluding that the lessor had granted or conveyed away his entire interest in the oil. 273 U.S. at 118, 47 S.Ct. 271. The ownership of the royalty oil was deemed to have remained in the lessor "who retained the power of disposition and the right to receive possession  .  .  . ." *Id.* The other cases cited above reach a similar conclusion that a

royalty owner who reserves the right to receive payment in kind has not conveyed away his entire interest in the oil or gas. Having retained a percentage interest in the property, it would be illogical to hold that the same percentage was subsequently "purchased" by the royalty owner.

In its brief, the FERC argues that its ruling is supported by *Mobil Oil Corp. v. FPC*, 149 U.S.App.D.C. 310, 463 F.2d 256, *cert. denied*, 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676. That case held that lessors, royalty owners were not engaged in "sales" of natural gas merely by accepting royalty payments pursuant to their leases. The FERC argues that this conclusion is correct because the entire ownership of the gas produced under the lease is in the lessee.[4] The conclusion in *Mobil Oil* that royalty owners are not sellers of natural gas was not based on any concept of ownership or title, however. *See* 464 F.2d at 259. The court found, rather, that a royalty owner was not a "seller" in any commonly understood sense of that term. Our decision that the Tribe is not a purchaser of its royalty gas is based on much the same reasoning.

■■■■ In sum, we find the FERC's application of its regulation so as to disqualify the Tribe from small producer rates because it "purchased" its royalty gas from a large producer to be without legal foundation. We recognize the longstanding rule, cited by the FERC, that an agency's interpretation of its own regulation is entitled to great deference on appeal. *See, e. g., United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48; *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700. The rule is based on the agency's greater expertise in the area they regulate. *See Perine v. William Norton & Co.*, 2 Cir., 509 F.2d 114, 120. When the administrative interpretation is not based on expertise in the particular field, however, but is based on general common

---

4. The FERC cites, in support of this conclusion, dictum in *J.M. Huber Corp. v. Denman*, 5 Cir., 367 F.2d 104, 113–14. However, the Fifth Circuit itself indicated that this statement should not be made without qualification. *See* 367 F.2d at 113 n.30, 114. In addition, the leases at issue in *Denman* apparently did not contain a reservation of the right to receive payment in kind, a distinction which we obviously believe to be critical. *See id.* at 107 n.4

law principles, great deference is not required. *See Texas Gas Transmission Corp. v. Shell Oil Co.,* 363 U.S. 263, 270, 80 S.Ct. 1122, 4 L.Ed.2d 1208. In interpreting the word "purchase," the FERC relied primarily on property concepts developed and enunciated by the common law. *See* Brief for Respondent at 16–17. "Since the decision of the Commission was explicitly based upon the applicability of principles of [law] announced by courts, its validity must likewise be judged on that basis." *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626.

The orders are affirmed in part and reversed in part. The case is remanded to the FERC for further proceedings not inconsistent with this opinion.