**WESSELY ENERGY CORPORATION,**
**Appellee,**

v.

**ARKANSAS LOUISIANA GAS COMPANY and Federal Energy Regulatory Commission, Appellants.**

Nos. 77–1749, 77–1750.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 9, 1978.

Decided Jan. 9, 1979.

Rehearing Denied March 29, 1979.

W. Michael Adams, of Blanchard, Walker, O'Quin & Roberts, Shreveport, La. (C. Harold Thweatt and James A. Peabody, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., with him on brief), for appellant, Arkansas Louisiana Gas Co.

McNeill Watkins II, Atty., Federal Energy Regulatory Com'n, Washington, D. C. (Robert R. Nordhaus, Gen. Counsel, and Philip R. Telleen, Atty., Washington, D. C., with him on brief), for appellant, Federal Energy Regulatory Com'n.

Stanley L. Cunningham of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl. and Robert M. Martin, Jr. of Storey, Armstrong, Steger & Martin, Dallas, Tex. (Philip D. Hart and Terry R. Barrett of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., with them on brief), for appellee, Wessely Energy Corp.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

PER CURIAM.

This is a declaratory judgment action wherein the plaintiff Wessely Energy Corporation, seeks a declaration as to the claims of defendants on gas which might be produced from its leasehold interest on the Southeast Quarter of Section 24, Township 16 North, Range 13 West, Blaine County, Oklahoma. The defendants are Arkansas Louisiana Gas Company (Arkla) and the Federal Energy Regulatory Commission (Federal Power Commission).

The trial court granted plaintiff's motion for summary judgment, and it quieted plaintiff's title " . . . against any claim of the defendants Arkansas Louisiana Gas Company and Federal Power Commission of any right to purchase, or any other character of right, title or interest therein."

28 U.S.C. §§ 1331, 1332, 1337. There is diversity for the action between plaintiff and Arkla.

The defendants have taken this appeal. The arguments of Arkla are directed to the merits and to the jurisdiction of the federal court as against the doctrine of primary jurisdiction and exhaustion of administrative remedies. The FERC does not argue the merits, as its arguments raise primary jurisdiction and exhaustion of administrative remedy issues only.

An oil and gas lease covering only this quarter section was executed by the mineral owners in June 1971. The lease had a primary term of five years. Aquitaine became a one-half owner of the lease in 1973. It had, several years before (October 1971), entered into a gas purchase contract with Arkla covering production which Aquitaine might then have from a very large area, some one million acres, or which it might later acquire or develop in this area of interest. This area, referred to in the gas purchase contract, was described only by the use of nine small scale county maps attached to the contract. The marked areas on these maps did not purport to cover only leases controlled by Aquitaine. The area covered by the marked portions of these maps comprised somewhere between 1,000,000 and 1,100,000 acres, or some 1500–1600 square miles in several counties. Thus this appeared to be the general area of interest of the parties to the contract and, as mentioned, Aquitaine agreed to sell the gas production it then had or might thereafter have in this area. At this time Aquitaine had been issued by the Federal Power Commission a Small Producer Certificate, and it sold gas from leases *other than the one here concerned* to Arkla under this authority, and under the gas purchase contract.

Aquitaine did not drill on the leasehold in issue, nor did anyone else, during the primary term of the 1971 lease. Thus it expired by its terms, and was released of record. This ended completely whatever interest Aquitaine had in the property or lease. There had been no production whatever from the lease, and no well had ever been drilled on the quarter section. Also, there had been no production under an oil and gas lease covering this quarter section and other lands, nor from a unit, and none from any reservoir underlying this tract.

The mineral owners executed a new oil and gas lease, effective after the expiration of the Aquitaine lease, on this quarter section. This lease was assigned to Wessely, and is the source of its title here sued upon.

If the leasehold had been drilled by Aquitaine during the primary term of the lease and commercial gas production obtained, this production would apparently have been covered by the gas purchase contract with Arkla. However, there was no production, and when the lease ended the interest of Aquitaine ended. Thus the condition or prerequisite for that lease or tract to be included in the gas purchase contract also ended. For the tract or the lease to be included in the gas purchase contract, two conditions had to be met. The first was an acquisition by Aquitaine of an interest in the lease, and the second was that there be production of the quantity to meet the contract provisions. The gas purchase contract was thus conditional in its application. There was, of course, no contractual relationship as to this tract between the lessor and Arkla created by the lease, contract, or otherwise.

Thus under the application of ordinary contract, and oil and gas law, the entire interest of Aquitaine in the tract ended with the expiration of the primary term of the lease. Also, since the condition of the gas purchase contract relating to production was never met, the contract never became applicable to Aquitaine's interest in this quarter section. As far as the gas purchase contract was concerned, this tract thus became just like any tract within the 1,000,000-plus acre area which Aquitaine never acquired, and which was held by the many complete strangers to the gas purchase contract. *See Vreeland v. Federal Power Comm'n*, 528 F.2d 1343 (5th Cir.).

Under ordinary standards Arkla's contract thus never became operative or applicable as to Aquitaine's leasehold interest in this tract, and it is this contract claim which plaintiff seeks to remove by this action.

The only basis advanced for Arkla's position that its gas purchase contract somehow attaches to the "land" is, of course, by an application of the Natural Gas Act. But again, with no drilling, no production, no facilities, there was no introduction of gas into the interstate market or any market. The Natural Gas Act was never applicable to this tract along with the vast areas of other undeveloped lands.

Arkla then builds on its Natural Gas Act argument and asserts that the district court had no jurisdiction because the FERC had primary jurisdiction and because Wessely had not exhausted administrative remedies by seeking a remedy with the FERC. We must hold that the doctrine of primary jurisdiction does not arise for the reasons hereinabove described. Likewise, Arkla's claim that Wessely should have exhausted administrative remedies must fail for the same reasons. The situation is thus not comparable to *Federal Power Comm'n v. Louisiana Power & Light Co.*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369.

■ The Natural Gas Act, 15 U.S.C. § 717(b), states that it applies to the ". . . transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale . . . and to natural-gas companies engaged in such transportation or sale . . ." Thus commercial production of gas with the commencement of interstate service is a condition to the application of the Act. After all, it is an Act relating to the "sale of gas," and it cannot apply to lock in this tract separately leased under the circumstances here present. Again, there is no question as to the facts, as all agree, and the question is purely one of law suitable for resolution in this quiet title suit as against Arkla.

■ Thus the plaintiff Wessely, a newcomer in the chain of title, holds by assignment the new oil and gas lease on the quarter section following the expiration of the old lease. It had, and has no contractual relationship with Arkla. It is as any other leaseholder in the general area where there are thousands. *California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct.

1955, 1960, 56 L.Ed.2d 505, was decided after this case was tried. *Southland* was commenced in proceedings before the Commission, not before a trial court. The opinion of the Supreme Court is based on the commencement of service requirement developed in previous cases. Thus the Court there considered properties which had been producing gas which had gone into interstate service for an extended period of time. The Court said:

> " . . . [R]espondents became obligated to continue that service when they assumed control of the gas. In the Commission's language, 'the dedication involved is not the dedication of an individual party or producer, but the dedication of the gas.' "

The Court continued:

> "In any event, we perceive no unfairness in holding respondents, as lessors, responsible for continuation of the service until abandonment is obtained."

In *Southland* the gas production from the lease had been sold in interstate commerce for at least twenty-five years. Again, *Southland* must be read as reiterating the production-service concepts. *See Jicarilla Apache Tribe v. FERC*, 578 F.2d 289 (10th Cir.); *Vreeland v. Federal Power Comm'n*, 528 F.2d 1313 (5th Cir.); *Harper Oil Co. v. Federal Power Comm'n*, 284 F.2d 137 (10th Cir.). The decision did not involve a jurisdictional problem in the context it is presented here. Thus if we apply *Southland*, we must conclude that nothing here took place to bring about an introduction of gas into any market or contract because there has been no production of gas, no drilling, and no contractual relationship with any purchaser. Under these circumstances issues relating to abandonment cannot arise. In *Southland* the Court also referred to the movements of gas considered in *Sunray Mid-Continent Oil Co. v. Federal Power Comm'n*, 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623, and in *California v. Lo-Vaca Gathering Co.*, 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357.

■ The position of the FERC on this appeal as to "jurisdictional" issues is difficult to assess. It appears that they want

this court to decide the primary jurisdiction issue in this proceedings in a way to bind the plaintiff and to require it to institute proceedings before it. The only points urged by the FERC in its principal brief and docketing statement were primary jurisdiction and exhaustion of remedies. These we do not consider to be "jurisdictional" in the strict sense. *See PAX Co. of Utah v. United States,* 454 F.2d 93 (10th Cir.). In its reply brief the agency does again refer to the limitations in section 22 of the Natural Gas Act, but only in answer to some of plaintiff's arguments on the merits. In the district court the FERC urged that the court did not have jurisdiction under section 22 as advanced by the plaintiff, and this appeared to be one of the agency's principal arguments.

We are inclined to agree that jurisdiction was not afforded by section 22 as no particular order or regulation as therein contemplated was sought to be enforced or a violation prevented so as to give the district court jurisdiction under that section. We find no other basis for jurisdiction as to the FERC. We also refuse to accept the suggestion that we decide the primary jurisdiction and exhaustion arguments as to the agency on this appeal.

The judgment and decree of the trial court are affirmed as to the defendant Arkla in all respects. It is also directed that the case be remanded to the trial court with directions to dismiss the proceedings as to the Federal Energy Regulatory Commission.

It is so ordered.

WILLIAM E. DOYLE, Circuit Judge, concurring.

I regret that I am unable to concur fully in the majority opinion.

First, I agree with the dismissal of the Federal Power Commission but my view of why it should be dismissed is that there is no subject matter jurisdiction to justify a ruling in favor of the plaintiff and against the Federal Power Commission. There is no justiciable issue as between the parties.

I would not complain about the majority opinion refusing to take up the issue of primary and secondary jurisdiction *if* it refrained wholly from deciding this question. I object, however, to the refusal of the majority to rule on the issue as to the Federal Power Commission and at the same time it rules that the land is not subject to the Natural Gas Act. Thus the majority opinion does what it declares that it will not do and so declares in the absence of the Federal Power Commission.

In sum, my general viewpoint is that the use of this quiet title suit as a means of getting out from under the regulation of the Natural Gas Act is wholly inappropriate. If the Natural Gas Act is obviously not applicable, there is an administrative proceeding which is to be employed to get such an adjudication. It should not be determined in this collateral proceeding.