601 F.2d 1144
 TEXAS OIL & GAS CORP., Wessely Energy Corporation,
Greenbrier 74 Limited, Zoller & Dannenberg, Inc.,
and Joseph K. Caskey, Plaintiffs-Appellees,
v.
MICHIGAN WISCONSIN PIPE LINE COMPANY, and the Federal Energy
Regulatory Commission, Defendants-Appellants.
 Nos. 78-1215, 78-1216.
 United States Court of Appeals,
Tenth Circuit.
 Submitted on Briefs March 2, 1979.
Decided July 17, 1979.
Rehearing Denied Aug. 21, 1979.
 
 James W. Shepherd and William J. Legg of Andrews, Mosburg, Davis, Elam, Legg & Bixler, Inc., Oklahoma City, Okl., for appellant Michigan Wisconsin Pipe Line Co.
 Robert R. Nordhaus, Gen. Counsel, Howard E. Shapiro, Sol., and McNeill Watkins II, Atty., of the Federal Energy Regulatory Commission, Washington, D. C., for appellant Commission.
 Robert M. Martin, Jr. of Storey, Armstrong, Steger & Martin, Dallas, Tex., and Stanley L. Cunningham, Philip D. Hart and Terry R. Barrett of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., for appellee Texas Oil & Gas Corp.
 Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This is an appeal from a district court order granting a motion for summary judgment made by Texas Oil & Gas Corporation and the other plaintiffs-appellees (hereafter collectively Texas Oil) claiming an interest in natural gas production from the tract of land at issue. The court held that any gas produced from the designated leasehold interests is not dedicated to delivery in interstate commerce, and it quieted title against the claim of Michigan Wisconsin Pipe Line Company (Michigan Wisconsin) to a right to acquire the production, and against the contention of the Federal Energy Regulatory Commission (FERC), that it had primary jurisdiction to determine the question whether the gas production is dedicated to interstate commerce.
 
 
 2
 Whether the district court should have decided the dedication issue, or should have dismissed the action, requiring litigation before the FERC as the agency with primary jurisdiction to decide the issue, is the question to be decided in the instant appeal.
 
 
 3
 Texas Oil holds valid oil and gas leases covering 400 acres in Section 26, Township 22 North, Range 17 West, Woodward County, Oklahoma which is operated as part of a unitized tract for production purposes. Shell Oil Company held similar interests in this land from 1956 to 1970. During that time Shell entered into a gas purchase agreement with Michigan Wisconsin, committing all natural gas produced from these lands to the pipeline. Michigan Wisconsin also executed a similar gas purchase agreement with Sam K. Viersen covering other interests in the unitized tract. The gas purchase agreement between Shell (and Viersen) and Michigan Wisconsin was conditioned upon the parties receiving certificates of public need from the Federal Power Commission (FPC, now FERC). Apparently the certificates were issued.
 
 
 4
 Shell drilled a successful well in 1962, delivering all natural gas production to Michigan Wisconsin until January 1969 when Shell abandoned and plugged the well with the permission of the Oklahoma Corporation Commission. Shell never applied to the FPC for permission to abandon its well on the tract.
 
 
 5
 A few years later, Texas Oil obtained the oil and gas leases at issue here on the same property, and entered into a gas purchase agreement with Delhi Gas Pipeline Corporation to deliver Intrastate all natural gas produced from the leaseholds. Texas Oil drilled a well to the same formation (Chester) from which the Shell well had produced, although on a different quarter section of the unitized tract. The new well was a producer and Texas Oil started delivering natural gas to Delhi on February 5, 1977, and continues to do so.
 
 
 6
 After one month of production Texas Oil filed the complaint in this case against the FERC and Michigan Wisconsin, seeking a declaratory judgment that the natural gas produced from these oil and gas leases is not dedicated to interstate commerce, and quieting its title against Michigan Wisconsin's claim the gas must be sold to it because of the prior certificate of need issued by the FPC dedicating the gas from these lands to interstate commerce.
 
 
 7
 The parties frame the issues identically to those presented in Wessely Energy Corp. v. Arkansas Louisiana Gas Co., 593 F.2d 917 (10th Cir. 1979), which was pending at the time this case was briefed. The same district court judge was assigned this case and based his decision on the legal conclusions he reached in Wessely. In briefing the appeal the parties noted the factual distinctions between this case and Wessely, but treated the cases as legally identical. We do not agree.
 
 
 8
 In Wessely a natural gas production company, Aquitaine, executed a gas purchase contract with an interstate pipeline to sell all of its production from an area describing more than one million acres (1500-1600 square miles), on much of which land it had no leases. Approximately two years later it became one-half owner of a lease on the land at issue in the case. But it did not drill on the land, nor did anyone else, during the term of the lease. The lease did not become part of any unitized producing tract, nor was any production obtained from any reservoir underlying the tract. After the lease expired, unlike the situation in Amarex, Inc. v. FERC, 603 F.2d 127 (10th Cir. 1979), the landowners leased to a company unrelated to Aquitaine, which had no contract for delivery to interstate commerce. We held the new lessee was not encumbered by Aquitaine's agreement:
 
 
 9
 Under ordinary standards Arkla's contract thus never became operative or applicable as to Aquitaine's leasehold interest in this tract, and it is this contract claim which plaintiff seeks to remove by this action. The only basis advanced for Arkla's position that its gas purchase contract somehow attaches to the "land" is, of course, by an application of the Natural Gas Act. But again, with no drilling, no production, no facilities, there was no introduction of gas into the interstate market or any market. The Natural Gas Act was never applicable to this tract along with the vast areas of other undeveloped lands.
 
 
 10
 593 F.2d at 919-920.
 
 
 11
 Unlike Wessely, natural gas was produced and sold in interstate commerce for seven years from the tract at issue in the instant case. Indeed, it was from the same production zone as the new well whose production is sought to be required to be sold to Michigan Wisconsin. This case is controlled by California v. Southland Royalty Co., 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978), and United Gas Pipe Line Co. v. McCombs, --- U.S. ----, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979).
 
 
 12
 Southland held that once gas begins to flow into interstate commerce the flow cannot be terminated without FERC approval:
 
 
 13
 Once the gas commenced to flow into interstate commerce from the facilities used by the lessees, § 7(b) required that the Commission's permission be obtained prior to the discontinuance of "any service rendered by means of such facilities."
 
 
 14
 436 U.S. at 527, 98 S.Ct. at 1960.
 
 
 15
 It also ruled the obligation survives the expiration of the lease, and can be imposed upon a party who does not hold the interstate certificate.
 
 
 16
 McCombs held that once FERC jurisdiction attaches a well cannot be abandoned without first acquiring the permission and approval of the Commission under Section 7(b) of the Natural Gas Act, 15 U.S.C. § 717f(b). This was applied even though the well had been abandoned in fact for several years and because it could not produce gas in commercial quantities. The Court's rationale was based upon the right of the Commission to require further exploration or other measures to assure the continuing supply of gas dedicated to interstate commerce:
 
 
 17
 Requiring Commission approval, "after due hearing," permits all interested parties to be heard and therefore facilitates full presentation of the facts necessary to determine whether § 7(b)'s criteria have been met. Contrary to respondents' assumption, . . . the Commission does not automatically approve abandonments whenever production has ceased. Indeed, the agency recently refused to grant an application where the producer had not adequately tested for new gas reserves. Had the lessees in the instant case filed an application for abandonment between 1966 and 1971, United might well have demonstrated that exploration of the leasehold had been insufficient to justify finding "the available supply of natural gas . . . depleted to the extent that the continuance of service (was) unwarranted." Section 7(b). And the Commission might have concluded that production from deeper reserves or other measures to restore service were feasible. Permitting natural gas companies to bypass abandonment proceedings simply because known reserves appear depleted would obviously foreclose these factual inquiries. Consequently, the abandonment determination would rest, as a practical matter, in the producer's control, a result clearly at odds with Congress' purpose to regulate the supply and price of natural gas. See California v. Southland Royalty Co., 436 U.S. at 526-527, 529-530, 98 S.Ct. 1955; Sunray MidContinent Oil Co. v. FPC, 364 U.S., at 142-147, 80 S.Ct. 1392; (Footnote omitted.)
 
 
 18
 at ----, 99 S.Ct. at 2467.
 
 
 19
 In the instant case, although permission for the abandonment was granted by the Oklahoma Corporation Commission, there was never any proceeding before the FERC. Therefore, we reverse and remand the case with instructions that the action be dismissed, in deference to the primary jurisdiction of the FERC to determine the issues between the parties.