Catherine LIEGL, on behalf of herself, her minor child Kathleen Liegl, and all others similarly situated, Plaintiff-Appellant,

v.

Arthur Y. WEBB, as Acting Commissioner of the New York State Department of Social Services, and Fred J. Buscaglia, as Commissioner of the Erie County Department of Social Services, Defendants-Appellees.

No. 545, Docket 85–7117.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1985.

Final Briefs Submitted April 16, 1986.

Decided Oct. 2, 1986.

Rene H. Reixach, Greater Upstate Law Project, Rochester, N.Y. (James Sheldon, Neighborhood Legal Services, Buffalo, N.Y., of counsel), for plaintiff-appellant.

Clifford A. Royael, Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., William J. Kogan, Asst. Sol. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Jaclyn C. Taner, Washington, D.C., (Richard K. Willard, Acting Asst. Atty. Gen., Salvatore R. Martoche, U.S. Atty., Washington, D.C., Ronald E. Robertson, Gen. Counsel, Ann T. Hunsaker, Associate Gen. Counsel, of counsel), as amicus curiae for the Dept. of Health and Human Services.

Before OAKES, KEARSE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appeal by Catherine Liegl on behalf of herself, her minor child and all others similarly situated from a judgment by the United States District Court for the Western District of New York, John T. Curtin, *Chief Judge,* dismissing her complaint after cross motions for summary judgment. Appellant contends that the procedure adopted by the New York State Department of Social Services for determination of eligibility for retroactive Medicaid claimants contravenes federal law and, therefore, violates the supremacy clause. Since we find no contradiction between the

---

**2.** Appellant has also moved for bail pending appeal. That motion is denied.

State's eligibility requirement and federal law, and since a recent interpretation by the Department of Health and Human Services ("HHS"), the federal agency charged with the responsibility of administering the Medicaid program, endorses the procedure used in New York, we affirm the decision of the District Court.

## BACKGROUND

In late November of 1981, appellant Catherine Liegl applied for retroactive Medicaid assistance from the Erie County Department of Social Services ("local agency") for herself and her minor daughter, Kathleen Liegl. The application sought retroactive reimbursement for $1,809.54 in expenses incurred on behalf of Kathleen while a patient in the Sister's Hospital in Buffalo, New York, from August 10 to August 17, 1981. After the local agency denied the application due to its determination that there was surplus income available to appellant for payment of such medical expenses, Catherine Liegl sought a "fair hearing" review from the Commissioner of the New York State Department of Social Services ("Commissioner").

On June 7, 1982, the Commissioner issued a decision affirming the determination of the local agency and concluding that the local agency's ruling complied with the state regulations which provide in pertinent part that:

(d) For persons not in chronic care, any excess income above the amounts allowed in the preceding schedules shall be utilized in the following manner:

(1) For inpatient hospital care, *only the excess income for a period of six months shall be considered as available for payment;* if the income of the applicant or recipient increases or decreases during the six-month period, his obligation for payment shall be altered accordingly.

18 NYCRR § 360.5 (emphasis added).

The Commissioner calculated that Catherine Liegl had a net monthly income of $861.73, and that this amount surpassed the exemption for a family of two by $377.73 per month.[1] Appellant does not challenge these calculations. However, based upon these figures the Commissioner found an accumulated surplus over a six month budget period of $2,266.38 to be available for payment of the daughter's inpatient hospital care. Apparently, the six months of surplus income was accrued from August 1981 through January of the following year. Since this accumulated surplus exceeded the amount of expenses for which reimbursement was sought, the entire application was denied. Appellant challenges the six month accrual of surplus income. She asserts that any such accrual should accumulate at most three months of surplus income. Using such a three month accrual would result in a total surplus of only $1,133.19 (3 × $377.73) available and thereby would render appellant eligible to recover $676.35 ($1,809.54 less $1,133.19) in medicaid payments.

On October 7, 1982, appellant commenced this action seeking class certification and injunctive and declaratory relief. The complaint alleged, *inter alia,* that the state regulation which provided that the excess income for a period of six months could be considered to be available for payment of medical expenses incurred for non-chronic ailments was in violation of federal policy promulgated by the former Department of Health, Education and Welfare ("HEW") as announced in HEW Action Transmittal SRS–AT–76–109 (MSA), issued July 8, 1976, and based upon the medical eligibility provisions of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*

After cross motions for summary judgment were filed, the district court ruled in favor of the agencies, dismissing the complaint in its entirety. The district court found that the state's surplus income provision did not violate any provision of the Social Security Act. The court went on to

---

1. Under New York Social Services Law § 366(2)(a)(8) (as amended in 1981), the yearly exemption for a family of two was $5,800 or $484.00 per month. Therefore, the excess income of $377.73 per month resulted from the difference between $861.73 and $484.00.

note, that it was "impossible to be certain" whether the HEW Action Transmittal was intended to apply in every instance, in the nature of a rule, or was merely intended to explain the proper calculation based upon an assumed set of facts. As a result, the district judge concluded that, since the state's six month budget period was within the outer boundaries of the federal statutory requirement, the supremacy clause claims were groundless. We agree with the district court and affirm its ruling.

## DISCUSSION

The Medicaid Program is a cooperative federal-state program established in 1965 "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Individuals covered by certain federal assistance programs such as Supplemental Security Income ("SSI") for the aged, blind, and disabled or Aid to Families with Dependent Children ("AFDC") automatically qualify for Medicaid, and States that choose to participate in the Medicaid Program are required to provide assistance to these individuals. *See* 42 U.S.C. § 1396a(a)(10)(A)(i); 42 C.F.R. § 435.100. These individuals are referred to as "categorically needy." 42 C.F.R. § 435.4.

At its option, a participating State may also provide coverage to other less needy individuals. *See* H.R.Rep. No. 213, 89th Cong., 1st Sess. 66 (1985); 42 U.S.C. § 1396a(a)(10)(C). Generally, these individuals are people who would otherwise qualify for SSI or AFDC but whose incomes exceed the level set for these assistance programs, *see Schweiker v. Hogan*, 457 U.S. 569, 573, 102 S.Ct. 2597, 2601, 73 L.Ed.2d 227 (1982); *De Jesus v. Perales*, 770 F.2d 316, 321 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). These individuals may qualify for Medicaid coverage only if they incur medical expenses that reduce their income over a given period down to the income eligibility standard. Such individuals are referred to as "medically needy." 42 C.F.R. § 435.4. Under 42 U.S.C. § 1396a(a)(34), a State that chooses to provide Medicaid coverage to the medically needy is required to make such assistance available on both a prospective and retroactive basis,

> [to applicants] for care and services included under the plan and furnished in or after the third month before the month in which he made application ... for such assistance if such individual was ... eligible for such assistance at the time such care and services were furnished.

*Id.*

In calculating whether an otherwise qualified individual has become medically needy it is necessary to apply some budget or "spend down" period during which the applicant's excess income is presumed to be available to pay medical expenses. While federal regulations are clear that a State may use a budget period of up to six months to determine prospective eligibility, 42 C.F.R. § 435.831, federal regulations are silent with regard to the length of the budget period applicable to determinations of retroactive eligibility.

Appellant contends that we should defer to the statement of agency policy included in the 1976 HEW Action Transmittal SRS–AT–76–109 as indicating the appropriate budget period for determinations of medically needy status regarding retroactive applicants. Although agency interpretations of federal statutes which are as complex and intricate as the provisions establishing and regulating the Medicaid Program are typically accorded particular deference, *De Jesus*, 770 F.2d at 327, we doubt the propriety of reliance upon the interpretation urged upon us herein.

This Action Transmittal was issued by the Medical Services Administration, a department within the Health Care Financing Administration ("HCFA") and included in its Medical Assistance Manual. Generally, the Medical Assistance Manual provides operational explanations to state agencies regarding the Medicaid program. In the in-

troduction of the manual under the subheading "Purpose" the manual states:

> The purpose of this Manual is to assist States in implementing ... Program Regulations pertaining to the administration of medical assistance. It is an official medium by which the Medical Services Administration *issues guides and procedures to States for the operation* of certain aspects of the medical assistance program under the Social Security Act.

Medical Assistance Manual—Instructions, MSA–PRG–1 (5/31/71) (emphasis added).

In the same section and under the subheading "Relationship to Regulations" the manual states:

> The material contained in this Manual is consistent with the Regulations on the subjects and contains no new or different requirements from those in the Regulations.... The Regulations present the specific requirements, developed from the Federal legislation, that States must meet in the State plan and in claiming Federal financial participation.

*Id.* These passages strongly suggest that the manual containing the Action Transmittal merely provides operational assistance to the state agencies without intending to supplement the regulations. Further, a manual does not comprise regulations which are issued by the Secretary and are entitled to "particular deference." *See De-Jesus,* 770 F.2d at 327. Rather, a manual contains interpretative guidelines that the court may disregard after due consideration. *See St. Mary's Hospital v. Blue Cross & Blue Shield Association,* 788 F.2d 888, 890 (2d Cir.1986); *Smith v. Miller,* 665 F.2d 172, 179 n. 7 (7th Cir.1981); *cf. Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (agency manuals have "no legal force").

The remainder of the manual contains explanatory practical examples for such things as "Determining Available Income."

The section relied upon by appellant is included therein and states:

> Where financial eligibility is routinely determined on less than a 6–month basis, such as quarterly or monthly, income shall not be considered available beyond the eligibility period. For example, in determining Mr. R's eligibility for the quarterly period July-September, earnings he may receive from employment to begin when he completes the training program in October are not considered. Note that financial eligibility for Medicaid coverage during the 3–month retroactive period must be separately determined; *i.e., by applying a quarterly medically needy income level to the amount of income which was actually available to the applicant during the retroactive period.*

*Id.* at § 4–30–30 (emphasis added).

This language alone provides no clear answer to the question whether the agency intended to mandate a quarterly budget period for all retroactive applicants or merely intended to respond to the assumed facts set forth therein. When read in the context of the previously quoted prefatory language in the manual, the interpretation that § 4–30–30 purports to supplement existing regulations seems strained. However, even assuming that the Action Transmittal was intended to set forth a rule that requires a quarterly budget period for the retroactive period, it fails to address whether such a three month retrospective budget period could be combined with a three month prospective budget period to achieve a total budget period of six months as applied herein.

Moreover, HHS has expressed a different view in a Notice of Proposed Rulemaking ("NPR") which seeks to establish a rule that would allow for the use of combined budget periods under the circumstances of this case. *See* 48 Fed.Reg. 39,959, 39,961 (proposed September 2, 1983). The NPR notes [2] that the prior agency policy which

---

**2.** The Notice of Proposed Rulemaking stated:
   B. Medically Needy Budget Period
     Current regulations at 42 CFR 435.831 and 436.831 specify that States having a medically

needy program may set a prospective budget period of between 1 and 6 months, during which an applicant's countable income is measured. Incurred medical expenses in this

precluded the use of combined budget periods for retroactive applicants is supported by neither statute nor regulation. It is unclear whether the Action Transmittal in fact announced agency policy, but even if it did, the modification of policy articulated in an agency manual would not require the completion of a notice and comment period culminating in a substantive rule. *See* Administrative Procedure Act § 553(d)(2), 5 U.S.C. § 553(d)(2). Therefore, the fact that the NPR has not yet been adopted by HHS does not preclude our taking account of it as a clarification of current policy.

The dissent acknowledges that the meaning of the Action Transmittal is ambiguous, but nevertheless urges that the NPR policy guidelines would have a retroactive effect in this case and therefore should not be applied here. In support of this contention, the dissent views the NPR as a statement of "new policy." However, in light of the ambiguity of construction of the Action Transmittal, we view the declaration of policy in the NPR as a clarification, rather than a change, of prior policy. Deferring to such a clarification is consistent with a court's responsibility to ascertain the appropriate statutory construction of an agency regulation. The NPR provides us with an updated view of the spend down guidelines that is consistent with the policy considerations discussed below. In our view, we should not disregard this interpretation of the agency's current policy in favor of a possible prior interpretation that is ambiguous at best.

As noted in the NPR, the position urged by appellant would result in an anomalous situation where a potential medically needy applicant might have a better opportunity to receive Medicaid assistance, and in fact may receive a larger Medicaid benefit, if his application is delayed and not made during the month when he received the medical care. The retroactive claim would be subject to at most a three month spend down period while an application submitted during the month would be subject to a six month spend down. The longer the applicable spend down the greater the possibility that an applicant's excess income might exceed the medical expense. It is difficult to see how such a result furthers the objectives of the statute. Were this outcome consistent with a clearly articulated agency policy, the results of such a policy might not dissuade us from deferring to that policy. However, here the prior agency policy is not clearly articulated and is in stark contrast with a more recent rule proposal.

Given the questionable applicability of the agency's policy as expressed in the Action Transmittal, the current proposed rule which endorses the state procedure, and the lack of any legislative authority contrary to the rule applied in New York, we find no basis upon which to support a supremacy clause challenge. We affirm the judgment of the district court dismissing appellant's complaint.

OAKES, Circuit Judge (dissenting):

I respectfully dissent.

---

period are then deducted, and when the individual's income reaches the standard, he or she becomes eligible. In addition to the prospective period, section 1902(a)(34) of the Act and regulations at 42 CFR 435.914 provide that Medicaid must be made available up to 3 months prior to the month in which an application is filed if the individual received services covered under the State plan at any time during that period, and would have been Medicaid eligible at the time services were received if he or she had applied. However, there is no statutory requirement that the budget periods used to compute income to determine retroactive and prospective eligibility be separate, as Medicaid policy now requires them to be. States have pointed out

the administrative difficulties involved in separating the budget periods and have suggested that they be permitted to combine them. States have also noted that individuals can avoid the application of budget periods of more than one month by applying monthly for retroactive eligibility.

Therefore, in the interest of allowing States to impose more flexible budget periods, we are proposing to revise regulations at 42 CFR 435.831 and 436.831 to provide that States may use a medically needy budget period of no more than 6 months that may include all or part of the 3 month retroactive period noted above.

48 Fed.Reg. 39,959, 39,961 (proposed September 2, 1983).

The Department of Health and Human Services' ("HHS") requirement that a three-month spend-down period be used to determine eligibility for retroactive Medicaid coverage, set forth in the 1976 Action Transmittal SRS–AT–76–109 (MSA) ("the ATL") and included in the agency's Medical Assistance Manual § 4–30–30, is an interpretive rule issued pursuant to 42 U.S.C. § 1396a(a)(34) (1982) (authorizing retroactive eligibility) and 42 C.F.R. § 435.-914 (1985) (regulation implementing three-month retroactive coverage). Interpretive rules are entitled to be given weight, *St. Mary's Hospital v. Blue Cross & Blue Shield Association,* 788 F.2d 888, 890 (2d Cir.1986), and, as Judge Friendly observed in our earlier "spend-down" case, *DeJesus v. Perales,* 770 F.2d 316, 327 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986), "courts must exhibit particular deference to the Secretary's position with respect to legislation as intricate as Title XIX." The seasoned judgments of administrators about Title XIX's application should not lightly be overturned. *See id.* at 321.

It might be said that the language of the ATL is ambiguous as to whether the agency intended to mandate a three-month spend-down period or merely to respond to assumed facts set forth in the ATL. But the ATL has been in place since 1976, and since then has consistently been treated by the agency as requiring a three-month spend-down period to determine eligibility for retroactive Medicaid applicants, and as precluding the use of a combined budget period to determine such eligibility. The consistency with which HHS, with its considerable expertise, has maintained this interpretation is a factor that supports judicial deference to the agency. *See Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). *See generally* 2 K. Davis, *Administrative Law Treatise* § 7–14 (2d ed. 1979). The ATL, then, as consistently interpreted by the agency, is in direct conflict with 18 N.Y.C.R.R. § 360.5(d)(1).

True, in September 1983 HHS issued a Notice of Proposed Rulemaking ("NPR") proposing a rule that would allow New York to use a combined six-month budget period. 48 Fed.Reg. 39,960–39,961 (proposed Sept. 2, 1983). But the appellant Liegl applied for Medicaid in November 1981, to cover an August 1981 hospital bill for her daughter. Her application was denied in December 1981 and the denial affirmed by the State Commissioner in June 1982. Throughout the application and review process, the governing federal policy was that a single three-month spend-down period be used in determining Medicaid eligibility in circumstances such as those in which Liegl found herself.

While not required by the governing statute, as noted in the preamble to the proposed rule, *id.* at 39,961, neither is this established policy inconsistent with the statute. Where a statute leaves open a number of possible interpretations, the agency may be expected to adopt the interpretation that it believes best effectuates the policies of the statute. It may refine its interpretation over time: "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 863–64, 104 S.Ct. 2778, 2792–93, 81 L.Ed.2d 694 (1984). But such refinements do not automatically have retroactive effect.

> Retroactive application of policy is disfavored when the ill effects of such application will outweigh the need of immediate application, *NLRB v. Majestic Weaving Co.,* 355 F.2d 854, 861 (2d Cir.1966), or when the hardship on affected parties will outweigh the public ends to be accomplished. *SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947).

*Iowa Power & Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796, 812 (8th Cir. 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). Here no need for retroactive application of the new policy articulated in the NPR has been shown, either in the NPR or the briefs submitted

by HHS or the New York Department of Social Services. Nor has it been suggested that the public ends accomplished by changing the policy retroactively would outweigh the hardship to Medicaid applicants such as the appellant Liegl. At the time her application for Medicaid was denied under the 18 N.Y.C.R.R. § 360.5(d)(1) eligibility requirements, the New York regulation was inconsistent with established federal policy, and no adequate reasons have been provided why that regulation should be saved retroactively by the NPR's proposed new policy. Furthermore, it is in just the circumstances here, where a retroactive change of a settled policy, rather than a retroactive settling of unsettled policy, is involved, that courts are most reluctant to allow a regulation retroactive effect in the absence of very good cause being shown. *See* 2 K. Davis, *Administrative Law Treatise* § 7–23, at 115–16 (2d ed. 1979) (favorably discussing *Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978)).

Another point in Liegl's favor is that the proposed new policy has never been adopted as a regulation. Although modification of the policy articulated in the ATL does not require notice or comment, *see* Administrative Procedure Act § 553(d)(2), 5 U.S.C. § 553(d)(2) (1982); *see, e.g., Continental Oil Co. v. Burns*, 317 F.Supp. 194 (D.Del.1970), nevertheless it would be premature to regard the NPR as fixing current policy. The whole purpose of a proposal for a rule—even a rule that does not require notice and comment—must be to air a change before that change is finalized. The majority, I fear, threatens to close off a potentially valuable mode in which agencies may proceed to rulemaking when it treats a mere proposal as establishing current policy and as replacing an agency's long established interpretation of a statute. A proposed rule is just that; it does not itself change established policy.

The most compelling argument in favor of the court's construction is that, if the ATL is enforced, Medicaid applicants may be in a better position if they apply after expenses have been incurred and thus have their eligibility judged under the retroactive three-month spend-down test than if they apply prospectively, in which case a six-month test would be used. But there was presumably a valid administrative reason for the distinction between prospective and retrospective Medicaid applications brought about by the rule in the ATL, and while the NPR shows a concern with bringing the prospective and retrospective spend-down periods into line, the agency's concern with doing so cannot be very great, because in the three years since the proposal was made, no new rule has resulted.

I would accordingly reverse.