**C.R.A. REALTY CORP., Plaintiff,**

v.

**Joseph R. CROTTY and United Artists Communications, Inc., Defendants.**

**No. 86 Civ. 7362 (RLC).**

United States District Court,
S.D. New York.

June 5, 1987.

Levy and Levy, New York City (Morris J. Levy, of counsel), for plaintiff.

Marvin Luboff, East Meadow, N.Y., for defendant United Artists Communications, Inc.

John M. Sherwood, Moraga, Cal., for defendant Joseph R. Crotty.

OPINION

ROBERT L. CARTER, District Judge.

This case turns on whether defendant Joseph R. Crotty, a vice-president of defendant United Artists Communications, Inc. ("United Artists"), is an "officer" under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), and should be forced to disgorge profits he made on the purchase and sale of United Artists common stock within a six-month period.

The defendants, claiming that Crotty's job title was merely honorary and that he

had no access to inside information, move to dismiss pursuant to Rule 12(b)(6), F.R. Civ.P., or in the alternative for summary judgment pursuant to Rule 56, F.R.Civ.P. The plaintiff, C.R.A. Realty Corp., cross-moves for summary judgment, also pursuant to Rule 56, F.R.Civ.P.

## BACKGROUND

The short-swing profits plaintiff seeks to disgorge were made on a series of transactions Crotty entered into between December 19, 1984, and July 24, 1985. During that period Crotty allegedly purchased 7,500 shares of United Artists common stock and sold 3,500 shares, realizing a profit of $59,405.00.[1]

Crotty has been a United Artists employee since December, 1969, and was elected a vice-president at a June 8, 1982, meeting of the Board of Directors. Since 1980 he has been the head film buyer for the Western Division of United Artists. In that capacity, Crotty supervises a staff of 30 who buy film for United Artists's 93 movie theaters in California, Nevada, Washington, Idaho, Arizona and Utah. He is in charge of the contracts United Artists enters into with film distributors, both initially and after a "run" is completed, when those contracts are adjusted. In addition, Crotty helps oversee the Western Division Advertising Department. He operates autonomously except when a distributor requires an extremely large cash advance or some other unusual term in a contract, in which case he confers with the president of the company. Crotty Affidavit, ¶¶ 1–5. The president is the sole corporate official to whom he reports.

The Western Division of United Artists is one of three geographically defined divisions. Each division operates independently. In fiscal year 1985, the Western Division's revenue amounted to $86,497,000, or 36.6% of the $236,422,000 in total theater revenue, and 18.2% of the $476,062,000 in total corporate revenue. In fiscal year 1986, the division earned $83,173,000, or 35% of total theater revenue of $237,454,000, and 15.7% of the total corporate revenue of $528,576,000. Hassanein Affidavit, ¶ 8.[2]

Crotty swears by affidavit that he has never had access to inside information that would give him an unfair advantage over the investing public. He swears that he has never been invited to and has never attended a meeting of United Artists's Board of Directors or any of its committees. Although he admits to access to the Western Division's daily receipts, he claims that this information is available to all film buyers and offers him no advantage over the investing public. He swears that he has no access to information regarding gross or net earnings of United Artists's theater exhibition business as a whole, or to the company's total earnings prior to the date such information is publicly announced. Finally, he swears that he has no authority to frame corporate policy. Crotty Affidavit, ¶¶ 5–8; Crotty Answer to Interrogatory 15(e), annexed to Levy Affidavit.

## DISCUSSION

Section 16(b) of the Securities Exchange Act of 1934 was designed to prevent corporate insiders from taking advantage of their positions to realize profits on non-public information. This was accomplished by making any director, officer, or beneficial owner of more than 10 percent of a corporation's common stock liable for any profit realized by any purchase and sale, or sale and purhase, of any equity security of the corporation within a six-month period. *See*

---

1. Crotty's transactions were as follows:
   December 19, 1984—Purchased 2,500 shares at $9.62 per share.
   January 17, 1985—Sold 1,500 shares at $26.13 per share.
   July 10, 1985—Purchased 5,000 shares at $4.81 per share.
   July 10, 1985—Sold 1,000 shares at $20.88 per share.
   July 24, 1985—Sold 1,000 shares at $23.38 per share.

Levy Affidavit, at 2.

2. In addition to movie theaters, United Artists owns a cable television system, operates janitorial supply and theatrical equipment businesses, participates in financing the production of motion pictures, and operates, leases, or owns commercial properties unrelated to its theaters. Hassanein Affidavit, ¶¶ 4, 5.

15 U.S.C. 78p(b) [3]; *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972).

The regulations promulgated pursuant to the statute define "officer" as a "president, vice president, secretary, treasury or principal financial officer, comptroller or principal accounting officer, and any person routinely performing corresponding functions with respect to any organization whether incorporated or unincorporated." Rule 3b–2, 17 C.F.R. § 240.3b–2 (1986). In its seminal opinion in *Colby v. Klune*, 178 F.2d 872, 873 (2d Cir.1949), the United States Court of Appeals for the Second Circuit, per Judge Frank, held that "officer" under section 16(b)

> includes, *inter alia,* a corporate employee performing important executive duties of such character that he would be likely, in discharging these duties, to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions. It is immaterial how his functions are labelled or how defined in the by-laws, or that he does or does not act under the supervision of some other corporate representative.

*Colby* involved essentially the flip-side of the situation before the court. There, the plaintiff sought to recover profits made by a corporate official who allegedly was an officer in every respect but title. The putative insider was the "Production Manager" of the Twentieth Century Fox-Film Corpo-

ration's studios in Los Angeles, responsible for procuring all the physical facilities needed for the production of motion pictures and for all non-artist employees. The district court observed that the "functions [the Production Manager] performs and the responsibilities he assumes would be fit for the president or other officers of many corporations," but held that section 16(b) applies only to officers designated in the by-laws. *Colby v. Klune,* 83 F.Supp. 159, 161–62 (S.D.N.Y.) (Conger, J.), *rev'd,* 178 F.2d 872 (2d Cir.1949).

The court of appeals reversed, holding that the term "officer" is not to be applied so woodenly. "[T]here remains much room for inquiring into the facts at a trial. For the functions of a 'vice-president' or 'comptroller' are not so well settled as to be self-evident, and there is need for evidence concerning those functions." *Colby, supra,* 178 F.2d at 875. "The question is what this particular employee was called upon to do in this particular company, *i.e.,* the relation between his authorized activities and those of this corporation." *Id.* For this determination, Judge Frank reasoned, an opportunity to question witnesses and observe their demeanor is necessary. *Id.* at 873–74.

*Colby* remains the law of this circuit. *See, e.g., Securities and Exchange Commission v. Aaron,* 605 F.2d 612, 616–17 (2d Cir.1979), *vacated on other grounds,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) (discussing *Colby* approvingly);

---

**3.** The statute provides:

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. § 78p(b).

*Schimmel v. Goldman*, 57 F.R.D. 481, 485 (S.D.N.Y.1973) (Bauman, J.). Under *Colby*, it is impossible to determine on the meager record before the court whether Crotty is an "officer" under Section 16(b). Thus, although the court is reluctant to "open the door to a detailed factual inquiry in each case" as to the purported officer's inside information, *see National Medical Enterprises, Inc. v. Small*, 680 F.2d 83, 84 (9th Cir.1982) (per curiam), this case may not be disposed of on the current proof.

Plaintiff's entire proof consists of Crotty's answers to written interrogatories, in particular Crotty's admission that he had access to the daily gross revenues of theaters in his division. Defendant contends that this information is available to all film buyers; and plaintiff offers no insight as to how difficult such information is to obtain or how the information could be used to Crotty's advantage as a trader in United Artists stock. The court can imagine certain scenarios in which Crotty might be advantaged by knowledge of his division's daily receipts. However, it is impossible to say, on the basis of the information in the record about the theater business and Crotty's role in that business, that Crotty "would be *likely* ... to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions." *Colby, supra*, 178 F.2d at 873 (emphasis added).

At the same time, it should be obvious that the court is not prepared to hold that Crotty is not an officer. In support of this position defendants rely on the Ninth Circuit decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston*, 566 F.2d 1119 (9th Cir.1978). In *Livingston*, the putative officer was one of 48 securities salesmen given the title of vice-president as a reward for outstanding sales records. *See id.* at 1121. The court reasoned that the title was "merely honorary," and held that section 16(b) did not apply. *Id.* at 1122–23.

As a subsequent Ninth Circuit panel explained, the *Livingston* decision carved out a "very limited exception" for officers whose "title is essentially honorary or cere-

monial." *Small, supra,* 680 F.2d at 84. Crotty's access to confidential information is obviously very different from that of someone who is "simply a securities salesman" with "none of the powers of an executive officer." *Livingston, supra,* 566 F.2d at 1122. Indeed, defendants' citation of *Livingston* is odd because in the Ninth Circuit an employee's title is nearly always dispositive of Section 16(b)'s applicability. *See Small, supra,* 680 F.2d at 84; *Livingston, supra,* 566 F.2d at 1122.

 Accordingly, defendants' motion to dismiss and their alternative motion for summary judgment are denied. In light of the inadequate information before the court, plaintiff's cross-motion for summary judgment is also denied. Plaintiff is free to renew its motion if it uncovers further information which it considers decisive.

IT IS SO ORDERED.