**C.R.A. REALTY CORP., Appellant,**

v.

**Joseph R. CROTTY and United Artists Communications, Inc., Appellees.**

No. 1084, Docket 89–7069.

United States Court of Appeals,
Second Circuit.

Argued April 28, 1989.

Decided June 14, 1989.

John M. Sherwood, Orinda, Cal., for appellee, Joseph R. Crotty.

Marvin Luboff, East Meadow, N.Y. for appellee, United Artists Communications, Inc.

Before OAKES, Chief Judge, and TIMBERS and MESKILL, Circuit Judges.

TIMBERS, Circuit Judge:

The essential question presented by this appeal is whether an employee's functions, rather than his title, determine whether he is an "officer" within the meaning of § 16(b) of the Securities Exchange Act of 1934. The district court held that the employee's functions were determinative. We agree. We affirm.

Appellant C.R.A. Realty Corp. appeals from a judgment entered December 27, 1988 in the Southern District of New York, Robert L. Carter, *District Judge*, dismissing after trial appellant's complaint which alleged that appellee Joseph R. Crotty (Crotty), an "officer" of appellee United Artists Communications, Inc. (United Artists or the company) engaged in short-swing trading in United Artists' securities in violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982), which prohibits short-swing trading in the securities of a company by any director, officer or 10% shareholder of the company. The district court held that Crotty was not an "officer" within the meaning of § 16(b)—despite his position as a corporate vice-president—because he was "a middle management employee of United Artists whose duties did not provide access to any confidential information about the company's financial plans or future operations". *C.R.A. Realty Corp. v. Crotty*, [1988–1989 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 94,140, at 91,413.

Appellant asserts on appeal that the district court erred in holding that Crotty was not an officer because (1) Crotty's lack of access to confidential or inside information is irrelevant since § 16(b) imposes strict liability on *any* officer engaging in short-swing trading regardless of whether he has

Morris J. Levy (Levy & Levy, on the brief), New York City, for appellant, C.R.A. Realty Corp.

access to inside information, and (2) in the alternative, appellant demonstrated in the district court that Crotty had access to inside information.

For the reasons which follow, we affirm.

### I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. We shall assume familiarity with the facts set forth in Judge Carter's earlier opinion in which he denied appellees' motion to dismiss and the motions for summary judgment by all parties. *C.R.A. Realty Corp. v. Crotty*, 663 F.Supp. 444 (S.D.N.Y. 1987).

Appellant is an organization incorporated to act as a private attorney general to purchase stock and commence actions against corporate officials for violations of the federal securities laws. During the period in question, appellant owned 10 shares of United Artists, then a nationwide distributor and exhibitor of motion pictures. Crotty, a vice-president of United Artists, was the head film buyer of its western division, a territory encompassing six western states.

Crotty was first employed by United Artists in December 1969. He became head film buyer for the western division in 1980. He was elected a vice-president of United Artists in 1982 and continued to serve as head film buyer for the western division. As head film buyer, he obtained movies to be shown at the 351 movie screens in the western division theaters. He supervised their distribution. This included negotiating and signing agreements pursuant to which United Artists obtained movies for exhibition, supervising the distribution of the movies to the company's theaters, and settling contracts after the movies had been shown in the theaters. Crotty also had some supervisory responsibility for advertising in his division.

Crotty supervised a staff of 30 people. He had virtually complete and autonomous control of film buying in the western division. He was required to consult with higher authority only if he wanted to exceed a certain limit on the amount of the cash advance paid to a distributor for the exhibition of a particular movie. This occurred no more than two or three times a year. The gross revenue from Crotty's division routinely was about 35–36% of United Artists' gross revenue from movie exhibition, or around 15–18% of the company's total gross revenue.

The short-swing transactions here involved took place between December 19, 1984 and July 24, 1985. During this period Crotty purchased 7500 shares of United Artists and sold 3500 of its shares. He realized a large profit which appellant seeks to recover on behalf of United Artists. Following an unsuccessful demand on United Artists that it proceed against Crotty to recover this profit[1], appellant commenced the instant action against appellees pursuant to § 16(b). Following trial, the district court entered a judgment which dismissed the complaint. The court held that, although Crotty was a vice-president of United Artists, he was not an officer within the purview of § 16(b) because he had no access to inside information regarding the company's financial plans or future operations. This appeal followed.

### II.

Section 16(b) provides in relevant part: "For the purpose of preventing the unfair use of information which may have been obtained by such ... officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such ... officer in entering into such transaction of holding the security purchased or of not repurchas-

---

1. Section 16(b) permits a shareholder of an issuer to bring an action on behalf of the issuer to recover short-swing profits 60 days after the shareholder has requested that the issuer commence such an action and the issuer has failed to do so.

ing the security sold for a period exceeding six months."

This provision of the statute "imposes a strict prophylactic rule with respect to insider, short-swing trading". *Foremost–McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251 (1976). Any corporate official within the statutory meaning of an "officer" who engages in short-swing trading automatically will be required to surrender any profit from the trading, "without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information". *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595 (1973); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 235–36 (2 Cir.), *cert. denied*, 320 U.S. 751 (1943). This objective test was chosen by Congress because of the difficulty of proving whether a corporate insider actually abused confidential information to which he had access or purchased or sold an issuer's stock with the intention of profiting from such information. *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972) (quoting *Bershad v. McDonough*, 428 F.2d 693, 696 (7 Cir.1970), *cert. denied*, 400 U.S. 992 (1971)); *Smolowe, supra*, 136 F.2d at 235–36. Since the statute imposes strict liability, it is to be applied only when doing so "best serves the congressional purpose of curbing short-swing speculation by corporate insiders". *Reliance Elec., supra*, 404 U.S. at 424.

■ Appellant challenges the district court's holding by asserting that Crotty automatically was an officer within the meaning of § 16(b) by virtue of his title of vice-president of United Artists. The district court, however, held that it was Crotty's actual duties at the time of the short-swing trading—rather than his corporate title—that determined whether he was an officer within the meaning of § 16(b). We believe that the district court's holding was correct.

Appellant's starting point in challenging the district court's holding is the Securities and Exchange Commission rule which defined the term "officer" in the 1934 Act as including a vice-president of an issuer. 15 U.S.C. § 78c(b) (1982) (SEC has power to define 1934 Act terms in manner consistent with Act); Rule 3b–2, 17 C.F.R. 240.3b–2 (1988).[2] Appellant asserts that, since Crotty is a vice-president of United Artists, this rule places him within the purview of § 16(b). We believe it is significant, however, that the SEC itself does not believe that this rule should be rigidly applied in determining who is an officer within the meaning of § 16. For example, two SEC releases show that the Commission does not consider an employee's title as an officer to bring the employee automatically under § 16. Release on Ownership Reports and Trading by Officers, Directors and Principal Stockholders, Exchange Act Release No. 26333 [1988–1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 84,343, at 89,601 (December 2, 1988)[3]; Release on Rules Applicable to Insider Reporting and Trading, Exchange Act Release No. 18114 [Vol. 4] Fed.Sec.L.Rep. (CCH) ¶ 26,062 at 19,063–5–19,063–6 (Sept. 23, 1981) (vice-president might not be an officer subject to

**2.** SEC Rule 3b–2 states:

"The term 'officer' means a president, *vice-president*, secretary, treasurer or principal financial officer, comptroller or principal accounting officer, and any person routinely performing corresponding functions with respect to any organization whether incorporated or unincorporated."
(emphasis added).

**3.** In proposing new rules in this Release to clarify the term "officer" under § 16, the SEC stated:

"If applied literally, the Rule 3b–2 definition of 'officer' can be too broad in the context of

Section 16; *of particular concern is the inclusion of all vice presidents in the definition.* Many businesses give the title of vice president to employees who do not have significant managerial or policymaking duties and are not privy to inside information.

The reporting and short-swing profit recovery provisions of Section 16 *were intended to apply to those officers who have routine access to material non-public information, not those with particular titles."*
Release No. 26333, Fed.Sec.L.Rep. (CCH) at 89,-601 (emphasis added) (footnote omitted).

reporting requirements of § 16(a) if officer's duties are "insignificant" and he or she has no access to inside information). We do not believe that Rule 3b–2 requires us to hold that Crotty is an officer within the purview of § 16(b) merely by virtue of his title as a vice-president of the company.

Moreover the district court's holding is consistent with the law of this Circuit. It relied primarily on *Colby v. Klune,* 178 F.2d 872 (2 Cir.1949). In *Colby* we held that a corporate employee who did not hold the title of a corporate officer nevertheless could be an officer within the meaning of § 16(b) if he "perform[ed] important executive duties of such character that he would be likely, in discharging these duties, to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions". *Id.* at 873.

*Colby* is not factually on all fours with the instant case; indeed it is a correlative of the instant case. Here we must decide whether Crotty's title as a vice-president in and of itself brings him within the purview of § 16(b), whereas the issue in *Colby* was whether an employee's duties could bring him under § 16(b) even if he lacked a title as a corporate officer. We believe that the reasoning of *Colby* applies here. In *Colby* we held that "[i]t is immaterial how [an employee's] functions are labelled or how defined in the by-laws, or that he does or does not act under the supervision of some other corporate representative". *Id.* In short, *Colby* established as the law of this Circuit that it is an employee's duties and responsibilities—rather than his actual title —that determine whether he is an officer within the purview of § 16(b). *See also SEC v. Aaron,* 605 F.2d 612, 616–17 (2 Cir.1979), *vacated on other grounds,* 446 U.S. 680 (1980); *Ellerin v. Massachusetts Mutual Life Ins. Co.,* 270 F.2d 259, 265 (2 Cir.1959); *Morales v. Holiday Inns, Inc.,* 366 F.Supp. 760, 762–63 (S.D.N.Y.1973) (Gurfein, J.) (function rather than title controls under § 16(b)).

Three other circuits have followed a similar functional approach in determining the liability of officers under § 16(b). Although the Ninth Circuit generally views an issuer's designation of one of its employees as a corporate officer as automatically bringing him within § 16(b), *National Medical Enterprises, Inc. v. Small,* 680 F.2d 83, 84 (9 Cir.1982) (per curiam), it recognizes an exception if the title is honorary or ceremonial. *Id.; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston,* 566 F.2d 1119, 1122–23 (9 Cir.1978) (title of vice-president raises an inference that employee has access to inside information that may be overcome if title is shown to be merely honorary). Two other Circuits generally follow our functional approach. *Winston v. Federal Exp. Corp.,* 853 F.2d 455, 456–57 (6 Cir.1988); *Gold v. Sloan,* 486 F.2d 340, 351 (4 Cir.1973), *cert. denied,* 419 U.S. 873 (1974).

The general approach established by our Court in *Colby* is consistent with that of the Supreme Court in § 16(b) cases in which the Court has emphasized that potential access to inside information is the key to finding liability, rather than rigid application of statutory designations. *E.g., Foremost–McKesson, supra,* 423 U.S. at 251–54; *Kern County, supra,* 411 U.S. at 597–604. In *Kern County,* the Court held that, even if a hostile bidder held 10% or more of the stock of a target company [4] when it exchanged the issuer's stock for stock issued as part of a merger designed to fend off the bidder, the bidder did not come within the ambit of § 16(b), since its hostile status precluded it from having any inside information about the target issuer. *Id.* at 597–604. These cases, as well as the approach followed by the district court in the instant case, reflect an interpretation of § 16(b) that "best serves the congressional purpose of curbing short-swing speculation

---

**4.** As stated above, a beneficial owner of 10% or more of a class of an issuer's registered securi-

ties also is subject to the provisions of § 16.

by corporate insiders". *Reliance Elec. Co., supra*, 404 U.S. at 424.

■ It is significant that the approach set forth in *Colby* implements the objective standard established by § 16(b). *Id.* at 422; *Smolowe, supra*, 136 F.2d at 235–36. *Colby* 's approach will require more proof that an employee is an officer under § 16(b) than merely showing that the employee holds a title as a corporate officer. We emphasize, however, that all that is required by *Colby* is that a plaintiff establish that it is more likely than not that the employee's duties gave him access to inside information. *Colby, supra*, 178 F.2d at 873. A plaintiff need not show that the employee actually obtained inside information or used it to his advantage.

We hold that it is the duties of an employee—especially his potential access to inside information—rather than his corporate title which determine whether he is an officer subject to the short-swing trading restrictions of § 16(b) of the 1934 Act.

### III.

■ We turn next to the district court's finding that Crotty's duties did not give him access to inside information concerning United Artists. Since we hold that this finding was supported by substantial evidence and was not clearly erroneous, we discuss it only briefly.

The evidence indicated that Crotty's appointment as a vice-president—two years after he became a head film buyer—was essentially honorary. The appointment was accompanied by no raise in pay or change in responsibilities. Viewing his responsibilities both before and after the appointment, Crotty had no access to inside information such as the financial or operational plans of United Artists. He was not a director of the company, never attended a directors meeting, and never received any information from the Board of Directors that was not available to the general public.

The only information that Crotty had that arguably might be said to be inside

information was that concerning daily revenue receipts or "film grosses" from the company's movie exhibition. Indeed, since appellees originally had failed to show that this information could not be used by Crotty to his advantage, the district court denied appellees' motion for summary judgment. *Crotty, supra*, 663 F.Supp. at 447. The trial testimony, however, established that this was not inside information. Entertainment Data, Inc., an independent contractor, collected the daily film grosses from the western division theaters and gave them to Crotty on an overnight basis. Entertainment Data, however, also gave daily film gross information to most of the major movie exhibitors and distributors in Los Angeles and San Francisco. This information also was distributed by Entertainment Data to daily trade publications such as *Daily Variety* and *The Hollywood Reporter*. Accordingly, there was substantial evidence to support the district court's finding that film gross information was not inside information and gave Crotty no advantage over other investors. This is not the sort of information that would "aid [one] if he engaged in personal market transactions". *Colby, supra*, 178 F.2d at 873.

We hold that there was substantial evidence to support the district court's finding that Crotty did not have access to inside information. This finding was not clearly erroneous.

### IV.

To summarize:

We hold that it is the actual functions of an employee—particularly his access to inside information—and not his corporate title that determine whether he is an officer within the purview of § 16(b) of the 1934 Act; Crotty's title of vice-president did not make him an officer. We also hold that the district court's finding that Crotty had no access to inside information is not clearly erroneous.

Affirmed.

MESKILL, Circuit Judge, dissenting:

I respectfully dissent.

The plain language of both section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982), and the applicable Securities and Exchange Commission (SEC) regulation, 17 C.F.R. § 240.3b–2 (1988), contains no exception that exempts appellee Crotty from liability in this case. Section 16(b) unambiguously provides, in pertinent part, that:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, ... shall inure to and be recoverable by the issuer.

The definition of "officer" for purposes of this section, as determined by the SEC, is "a president, vice president, secretary, treasurer or principal financial officer, comptroller or principal accounting officer, and any person routinely performing corresponding functions with respect to any organization whether incorporated or unincorporated." 17 C.F.R. § 240.3b–2.

While these provisions clearly leave room to construe as officers those who do not possess the titles of officers, *see Colby v. Klune,* 178 F.2d 872, 873 (2d Cir.1949), *see also Securities and Exchange Comm'n v. Aaron,* 605 F.2d 612, 616–17 (2d Cir.1979), *vacated on other grounds,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), they do not permit the reverse inference.

Where the language of a statute is clear, as it is in this case, any extraneous considerations, such as the statute's legislative history, are irrelevant to an analysis of the statute's meaning. *Davis v. Michigan Dep't of Treasury,* — U.S. —, — n. 3,

109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891, 901 n. 3 (1989); *United States v. Ron Pair Enterprises, Inc.,* — U.S. —, —, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *New York State Pesticide Coalition, Inc. v. Jorling,* 874 F.2d 115, 118 (2d Cir.1989). Crotty's title, vice president, is explicitly included within the list of titles that the SEC has determined constitute officers per se under section 16(b). He is, therefore, liable under that section. There is nothing within the terms of either section 16 or 17 C.F.R. § 240.3b–2 that makes either provision ambiguous. While a pragmatic approach may be proper when interpreting the outer reaches of section 16, which is a strict liability statute, it is not called for in this situation.[1] There is no reason to ignore the unambiguous language of the statute. Therefore, under the plain terms of the statute and regulation, Crotty is liable to United Artists (UA) for the profits on his transactions.

Simply put, the majority's interpretation of section 16(b) writes the word "officer" out of the statute. At the very least, the statute should create a presumption that an officer has access to inside information. The majority opinion, however, gives only lip service to the words of the statute and the SEC's own regulation interpreting those words. Crotty is a vice president of UA, and as such he should be liable for the profit he made in the short-swing transactions at issue here.

It makes no difference that since the time of his purchases and sales, the SEC has proposed amendments that, Crotty argues, would explicitly exempt him from the coverage of section 16(b). *See* 53 Fed.Reg. 49,997 (proposed Dec. 13, 1988). Not only were those provisions not in effect at the time in question, they are not in effect today. As the Supreme Court has said, "[i]t goes without saying that a proposed

---

1. Unlike the situation in *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 599, 93 S.Ct. 1736, 1747, 36 L.Ed.2d 503 (1973), there was nothing "involuntary" in the nature of Crotty's purchase and sale of securities. In *Kern,* the Supreme Court held that a tender offeror who had failed in a takeover attempt could sell back stock it had obtained in the course of the takeover attempt without violating section 16(b). This was so even though the transaction fell within the literal terms of the statute. The Court made it clear, however, that the involuntary nature of the transaction was of prime importance to the outcome of the case.

regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675 (1986); *but cf. Liegl v. Webb*, 802 F.2d 623, 626–27 (2d Cir.1986) (proposed rule change, which did not require notice and comment rulemaking and which was intended to clarify existing rule, relevant to interpretation of that rule).

Because of the plain language of the statute alone, I believe that Crotty is bound by the provisions of section 16(b) as a matter of law, and I therefore would reverse the judgment of the district court.

There is, however, a second reason why I believe the district court's decision should be reversed. Even under the majority's reading of the statute and regulation, Crotty is an insider. The majority opinion itself reveals the great responsibility and control that Crotty had over the financial affairs of UA:

> As head film buyer, [Crotty] obtained movies to be shown at the 351 movie screens in the western division [of UA] theaters. He supervised their distribution. This included negotiating and signing agreements pursuant to which United Artists obtained movies for exhibition, supervising the distribution of the movies to the company's theaters, and settling contracts after the movies had been shown in the theaters. Crotty also had some supervisory responsibility for advertising in his division.
>
> Crotty supervised a staff of 30 people. He had virtually complete and autonomous control of film buying in the western division. He was required to consult with higher authority only if he wanted to exceed a certain limit on the amount of the cash advance paid to a distributor for the exhibition of a particular movie. This occurred no more than two or three times a year. The gross revenue from Crotty's division routinely was about 35–36% of United Artists' gross revenue

from movie exhibition, or around 15–18% of the company's total gross revenue. Majority op., § I. The facts clearly show that Crotty was in a position not only to bind UA through the execution of major contracts, but also to obtain information that could be useful in making investment decisions before that information was generally known either within the company, within the industry or to the general public. If an officer chooses to trade in his or her company's stock, whether that officer actually uses inside information is irrelevant. It is the availability of inside information that is controlling under section 16(b). That this is so is evident from the cases that have reached outside the realm of titles to find that those who do not have the title of an officer can be liable under provisions of the securities laws that nominally apply to officers. Those cases have focused on the function an employee performs and the information to which an employee is exposed, and not the employee's title. If an employee's functions provide the employee with access to inside information, that employee falls within the purview of these laws. Thus, the critical issue is access to information, and not the use thereof. *See, e.g., Aaron*, 605 F.2d at 617 (employee who participated in management decisions and had supervisory responsibilities was potentially liable under 15 U.S.C. § 77t(b) (1976) and 15 U.S.C. § 78u(d) (1976)); *Colby*, 178 F.2d at 875 ("The question is what this particular employee was called upon to do.").

The majority concludes that because Crotty received information about a movie's daily gross revenues only at the same time that this information became generally available, he was not privy to inside information. I disagree. While the discovery of a movie's daily gross revenue could be inside information if no one else were able to get that information, that is not the only information that may be considered "inside."

For instance, Crotty knew just how many contracts were being negotiated at any one time, and the price UA was paying for the rental of each movie. He would therefore know of any changes in UA's fortunes, as

evidenced by a decrease or increase in the rate UA was forced to pay for distribution rights to a movie. He would also be in a position to know what percentage of the gross on a movie UA could expect to receive. This information could be useful even before actual gross revenues were known. Thus, if UA had distribution rights to a movie that was certain to be a blockbuster, but its distribution contracts were for any reason out of line with industry norms, Crotty would know about it.

More fundamentally, Crotty had the power to negotiate for movies to distribute in the first place. Knowing the level of success that UA was having in acquiring movies to lease would also be invaluable to one who wished to pursue a course of insider trading. In a volatile market such as that of the movies, knowing whether a company had few or many chances with which to make money over the course of a season could be of great help in gauging the future success of that company.

It is naive to assume that because Crotty was not one of UA's directors and did not attend meetings of the board of directors, he did not have access to inside information. Not only is inside information available from other sources, but nothing prevented him from, for example, making a phone call to other UA officers or the directors themselves and discussing with them the course of meetings that he did not attend. In this respect, the majority ignores the fact that, whether or not Crotty actually received or used inside information, his position gave him access to it.

The majority makes much of the point that Crotty's duties did not change when he received the title "vice president" from UA's board of directors. I find this fact non-illuminating, however. There is nothing to indicate that Crotty's new title was merely honorary; it could very well be that he was actually performing the duties of an officer before he received the title, and thus the title was recognition of a position that he had already *de facto* attained. Thus, the title of vice president may have merely caught up with his duties and responsibilities.

Especially where one person has "virtually complete and autonomous control" of "15–18% of [a] company's total gross revenue," and that person has not only the title, but also the duties, of an officer and insider, he or she should be held liable for any profits made on short-swing transactions such as those engaged in by Crotty here.

For these reasons, I believe that Crotty was an officer subject to the restrictions of section 16(b) as a matter of law. Furthermore, even if he were not subject to section 16(b) as a matter of law, the district court's finding that Crotty had insufficient access to inside information for him to be deemed an insider was clearly erroneous. I would therefore reverse the judgment of the district court.