**STATE OF NEW YORK DEPARTMENT OF SOCIAL SERVICES, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary, and the United States Department of Health and Human Services, and Gail R. Wilensky, Administrator, and the Health Care Financing Administration, Defendants.**

**No. 91 Civ. 8300 (KC).**

United States District Court, S.D. New York.

Jan. 29, 1993.

---

Jennifer Devine, Arnid E. Roach, Covington & Burling, Washington, DC, for plaintiff.

Christine Chwang, Asst. U.S. Atty., New York City, for defendants.

## OPINION AND ORDER

CONBOY, District Judge:

Plaintiff, the New York State Department of Social Services ("New York"), brings this action against the United States Department of Health and Human Services ("HHS"), HHS Secretary Louis W. Sullivan, the Health Care Finance Administration ("HCFA"), and HCFA Administrator Gail R. Wilensky (collectively "the Secretary"), claiming that the Secretary refused to subsidize at the statutorily required lev-

el New York's operation of the New York City Welfare Management System ("WMS/NYC"). The WMS/NYC, which is an extension of a system New York installed in all of New York State except New York City ("upstate WMS"), is an enhancement of New York State's Medicaid Management Information System ("MMIS"). MMIS is a Mechanized Claims Processing and Information Retrieval System ("MCPIRS") used by New York to, *inter alia*, process Medicaid claims. New York and the Secretary now move for summary judgment.[1] For the reasons that follow, the Secretary's motion is granted and New York's motion is denied.

## I. Background

### A. Statutory and Regulatory Background

The Medicaid Act, Title XIX of the Social Security Act ("the act"), 42 U.S.C. §§ 1396, *et seq.* (1992), establishes a state-administered, federally-subsidized program for providing medical assistance to needy individuals. A state seeking to participate in the program must submit to the Secretary a comprehensive plan for reimbursing health care providers for services they provide to low income and disabled patients. The federal government partially reimburses states, whose plans have been approved by the Secretary, for the costs of providing medical assistance and administering the program. 42 U.S.C. § 1396b.

The act provides that among the administrative costs for which a state participating in the Medicaid program may obtain reimbursement are the costs attributable to the development and operation of an MCPIRS. 42 U.S.C. § 1396b(a)(3)(A)(i). An MCPIRS is "a system of software and hardware used to process Medicaid claims, and to retrieve and produce utilization and management information about services that is required by the Medicaid agency or Federal Government for administrative and audit purposes." 42 C.F.R. § 433.111(b) (1991). The act also provides that states shall re-

ceive 90% Federal Financial Participation ("FFP"), i.e. federal funding, for "the design, development, or installation of such [MCPIRS's] as the Secretary determines are likely to provide more efficient, economical, and effective administration of the [State's Medicaid] plan." 42 U.S.C. § 1396b(a)(3)(A)(i). The act indicates that the states shall receive 75% federal funding for "the operation of systems (whether such systems are operated directly by the State or another person under a contract with the State) of the type described in subparagraph (A)(i) (whether or not designed, developed, or installed with assistance under such subparagraph) which are approved by the Secretary...." 42 U.S.C. § 1396b(a)(3)(B). Besides discussing federal subsidies which are not relevant to the case at bar, the act indicates that States shall receive 50% federal funding for costs the Secretary finds necessary "for the proper and efficient administration of the State plan." 42 U.S.C. § 1396b(a)(7). The act says nothing about funding enhancements to MCPIRS's.

The regulations contained in the Code of Federal Regulations mirror the three-tiered statutory framework of the Act. The regulations first require a state to describe its proposed mechanized claims processing and information retrieval system in an advance planning document ("APD"). If the proposed system satisfies certain conditions, HFCA will approve it, and Federal Financial Participation will be available to the state at a 90% rate. *See* 42 C.F.R. § 433.-112(b) (1991). After the state installs the entire system and HFCA approves the system's operation, 75% FFP is available to the state for the system's operating costs. 42 C.F.R. § 433.116 (1991). Miscellaneous administrative costs necessary for the proper administration of the state program are reimbursed at a 50% FFP rate. *See* 42 C.F.R. § 433.15(b)(7) (1991). Moreover, the regulations provides that "FFP is available at 90 percent in expenditures for ... enhancement of an [MCPIRS]."

---

**1.** Both the Secretary and New York agree that WMS/NYC is not an MCPIRS, but is an en-

hancement to an MCPIRS.

Chapter 11 of the State Medicaid Manual ("SMM"), which is made part of the regulatory scheme by 42 C.F.R. § 433.110(a)(1) (1991), discusses the funding scheme in more detail.[2] The SMM contemplates the installation of an MCPIRS in the following manner. First, the state will develop, install, and test components of the MCPIRS's known as subsystems, *see* Exhibit C to Defendant's Statement Pursuant to Rule 3(g) [hereinafter "SMM"] § 1255, and the Secretary will fund the development, installation, and testing of these subsystems at a 90% FFP rate. *See id.* These subsystems may become operational before the MCPIRS becomes operational, and the subsystems may by themselves perform useful functions. *See id.* Nevertheless, after the state develops, installs, and tests the a subsystem, the Secretary will only provide the state with 50% FFP for the subsystem's operating costs prior to the complete MCPIRS's operation. The policy of funding these subsystem operations at 50% FFP is known as the transition funding policy. Once the MCPIRS is operating and HCFA approves the MCPIRS's operation, the State is entitled to 75% FFP. Should the Secretary determine that date upon which the system satisfied HFCA's criteria for operational approval was prior to the date upon which the HFCA actually approved of the system's operation, the Secretary will make available to the state 75% FFP from the former date rather than from the latter. *See id.*

As far as funding for MCPIRS enhancements is concerned, SMM § 11255 provides that 90% FFP is available for "improvement of each subsystem in an approved complete system." SMM § 11255 indicates that FFP at the "90–percent level for any subsystem terminates on the date the ... improvement to a subsystem is fully tested and subsequently accepted by the State." SMM § 11255. SMM § 11255 also provides that 50% FFP "is available for the opera-

tion of any subsystem from the point that 90–percent FFP ceases until the complete system is fully operational...." Once the entire MCPIRS is operating, and the Secretary approves the MCPIRS's operation, the state is entitled to 75% FFP for the operation of the MCPIRS.

### B. Factual Background

The MMIS, which New York installed in 1977 and which is in operation throughout the State, is the general system design approved by HCFA for the mechanized processing of claims and information retrieval. *See* Complaint Attached as Exhibit A to Defendants' Statement Pursuant to Civil Rule 3(g) [hereinafter "Compl."] §§ 7, 18. The primary function of the MMIS is to process claims submitted by health care providers to New York for Medicaid funds. Administrative Record [hereinafter "R."] 1414. Upstate WMS determines recipient eligibility of New Yorkers who do not live in New York City for all major welfare programs supervised by New York. R. 1411–18. Upstate WMS and WMS/NYC are not part of New York's existing MMIS. R. 1414. Rather, Upstate WMS and WMS/NYC interface with New York's MMIS to provide data on individuals eligible for Medicaid in New York State. R. 1414, 1423.

HCFA approved the Upstate WMS's APD in May 1977. The APD proposed initial installation of WMS in upstate New York and subsequent extension to New York City. Affidavit of Bow Eng. ¶ 7 at R. 753. New York installed the WMS incrementally by region in upstate New York, and the last regions became operational in March 1982. *Id.* at ¶ 8; R. 956. Following HCFA's approval of the operation of Upstate WMS, the Secretary funded and continues to fund the operation of upstate WMS at a 75% FFP rate. Affidavit of Bow Eng. ¶ 9 at R. 753.

**2.** New York cites *Liegl v. Webb,* 802 F.2d 623, 626 (2d Cir.1986), for the proposition that "the SMM is an informal, non-binding policy manual that HCFA sends to the States to provide guidance on the Medicaid Program." Plaintiff's Memorandum in Support of its Motion for Sum-

mary Judgment at 4 n. 4. However, as opposed to the manual in *Liegl,* and as discussed above and *infra,* SMM part 11 is made mandatory by 42 C.F.R. § 433.10(a)(1) and has the binding power of a regulation.

In November, 1981, New York submitted an APD describing its plan to introduce WMS in New York City. *Id.* On February 22, 1983, HCFA approved funding for the first phase of the WMS/NYC. *Id.* at ¶ 9. In the approval letter, HFCA specified the FFP that the Medicaid program was going to provide: "50%, 75%; 90% FFP subject to the provisions of 42 C.F.R. Part 433." R. 762. On October 18, 1984, an HHS representative informed New York by letter that HHS would provide New York FFP at the rate of 90% for the development and installation of the WMS/NYC, at the rate of 50% for operation of modules at each of the 92 pilot sites and tiers, and at the rate of 75% "once city-wide implementation [was] complete i.e., all modules and subsystems [were] operating throughout New York City, ... subject to HFCA review and approval." R. 130–31. HFCA never reviewed and approved the operation of WMS/NYC. R. 754, 954. HHS funded the development and installation of WMS/NYC at the 90% rate, and is currently funding the operation of WMS/NYC at the 50% FFP rate.

HFCA has disallowed all the claims New York has made for 75% FFP to pay for the operational costs of the WMS/NYC, and has only provided FFP to New York at the 50% rate generally available for MCPIRS administrative costs. HCFA disallowed these claims because New York had submitted claims for the 75% FFP prior to HCFA's having approved of the operation of the entire WMS/NYC system citywide. Thus, New York had not met the prerequisites for enhanced funding set forth in 42 C.F.R. § 433.116(a) (1991).

New York appealed HCFA's disallowances to the HHS Departmental Appeals Board ("DAB"). New York principally challenged HCFA's authority to require approval of the operation of the WMS/NYC as a condition to receiving 75% FFP for operational costs. New York argued that because WMS/NYC is not a mechanized claims processing and information retrieval system, it is not subject to the requirements in the HFCA regulations. New York also claimed that HCFA had arbitrarily used a different process for reviewing the WMS/NYC than the Secretary had used for reviewing the upstate WMS. The State contended that because HCFA had approved the upstate WMS incrementally by region, it was bound to review the WMS/NYC incrementally by site.

Following a hearing, DAB upheld the disallowances. DAB found that the WMS/NYC is not an MCPIRS, R. 5, and that therefore the only basis upon which New York could properly have claimed 90% FFP during the developmental phase of the WMS/NYC was if HCFA had considered the WMS/NYC an "enhancement" to MMIS. R. 8; *see* 42 C.F.R. § 433.112(a) (1991). DAB then found that as an "enhancement" to the MMIS, the WMS/NYC was subject to HFCA's approval prior to the payment of 75% FFP for operational costs. R. 9. DAB concluded that it was reasonable to condition the approval of New York's request for enhanced FFP on HCFA's approval of the operation of the totally installed WMS/NYC.[3]

DAB also rejected New York's argument that the approval regulations did not apply to the WMS/NYC. DAB made the factual finding that, during negotiations between New York and HCFA over the funding of the WMS/NYC, HFCA gave New York "ample notice and [New York] understood that these provisions [42 C.F.R. § 433.116 and the provisions of the SMM] would apply to WMS/NYC." R. 8. DAB noted that New York's minutes of a November 8, 1984 meeting with HCFA officials indicated a discussion regarding "transitional funding of a system at 50% for operational costs until the system is fully implemented and approved by HCFA as operational." *Id.* DAB also referred to an October 18, 1984 letter in which the Secretary explicitly notified New York that 75% would not be available until after New York implemented the

---

3. In 1989, the regulations were amended to preclude any enhance funding of an eligibility determination system such as the WMS/NYC. *See* 42 C.F.R. § 433.112(c) (1991). The regulations also now prohibit the categorization of an eligibility determination system as an "enhancement" to an MCPIRS. 42 C.F.R. § 433.111(b)(3) (1991).

WMS/NYC citywide and HCFA approved of the operation of the system.

Finally, DAB rejected New York's argument that HCFA unreasonably treated differently the approval of the upstate WMS from the approval of the WMS/NYC. DAB found that HCFA's actions with respect to WMS/NYC "were in full accord with applicable regulation and policy," R. 18, and that "nothing in the applicable regulations and policy committed HCFA to incremental review." *Id.* DAB noted that the difference in the approval process for the upstate WMS and the WMS/NYC could be justified by the differences in the systems, attributable in part to the "uniqueness of the City's size, caseload, structure and labor unions." R. 17. DAB reiterated that New York had been informed of the requirement of city-wide approval of the WMS/NYC and had agreed to city-wide review. R. 16–17.

In this appeal from DAB's decisions,[4] New York makes three claims. First, it contends that 42 U.S.C. § 1396b(a)(3) requires that "all WMS costs be considered either ... reimbursable at the 90% FFP rate, or ... reimbursable at the 75% rate." Compl. ¶ 32. Because the transition funding provision contained in SMM § 11255 provides for an interim period of 50% FFP prior to system-operation approval and reimbursement at the 75% FFP rate, New York believes that SMM § 11255 is contrary to 42 U.S.C. § 1396b(a)(3). Second, plaintiff alleges that SMM § 11255 was adopted in violation of the notice and comment provisions of the Administrative Procedure Act, and that therefore SMM § 11255 is invalid. Third, New York argues that the transition funding provision, i.e., SMM § 11255, has been applied arbitrarily and capriciously by HFCA to the WMS/NYC. In particular, New York alleges that the Secretary applied the transition funding provision in Upstate New York differently than he did for WMS/NYC. *See* Compl. ¶ 41.

II. The Secretary's Construction of the Act is Permissible

The central question in this case is what is the proper FFP rate to which a state is entitled for the state's operation of a partially installed enhancement to an MCPIRS? The Secretary maintains that he may fund the operation of a partially installed enhancement at 50% FFP, and that only after he approves the complete enhancement's operation must he fund the enhancement's operation at 75% FFP. New York insists that after the Secretary approves the enhancement's APD, there is no further review by the Secretary to which the enhancement is subject. Moreover, New York asserts that the Act only authorizes the Secretary to fund the enhancement at a 75% or 90% FFP rate, and that therefore the Secretary may not fund the enhancement at a 50% FFP rate. We believe that the Secretary's interpretation of the Act is permissible and must be upheld.

 The Supreme Court has stated that

[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

---

**4.** The determinations from which New York appeals are DAB Nos. 1145, 1170, 1174, and 1213. *See* R. 2, 1646, 1656, 1666. DAB adopted the reasoning of decision No. 1145 in decision Nos. 1170, 1174, 1213.

**970**

837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Moreover, to be upheld, the Secretary's construction "need not be the only reasonable one, or even the one the Court would have adopted if the question had initially arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Indeed, "[r]egardless of the specific language used by the courts in giving weight or deference to the agency's interpretation of its statutory language, it is clear that the agency's interpretation should be followed unless there are compelling indications that it is wrong." *Weeks v. Quinlan,* 838 F.2d 41, 43 (2d Cir.1988). Under this standard, the Secretary's interpretation of 42 U.S.C. § 1396b must be upheld.

Section 1396b does not refer to MCPIRS enhancements in its text, and thus § 1396b arguably does not require the Secretary to fund the development and operation of such enhancements. Nevertheless, the Secretary has decided to fund the development and operation of MCPIRS enhancements, and neither New York nor the Secretary have argued that the Secretary's decision to do so is improper. However, New York asserts that the transition funding policy is directly contrary to the funding scheme described in § 1396b, and is thus invalid.[5]

New York and the Secretary recognize that before a state is entitled to 90% FFP for MCPIRS design, development or installation, the Secretary must review and approve the state's APD. The language of the Act amply supports this interpretation. *See* 42 U.S.C. § 1396b(a)(3)(A)(i) (the state is entitled to "90 per centum of so much of the sums expended during such quarter as are attributable to the design, development, or installation of such mechanized claims processing and information retrieval sys-

tems *as the Secretary determines are likely to provide more efficient, economical, and effective administration of the plan."* (emphasis added)).

However, the Secretary and New York differ over whether the Secretary must review and approve a completely installed MCPIRS before a state is entitled to 75% FFP to pay for the MCPIRS's operational costs. The act provides that a state is entitled to

> 75 per centum of so much of the sums expended during such quarter as are attributable to the operation of systems (whether such systems are operated directly by the State or by another person under a contract with the State) of the type described in subparagraph (A)(i) (whether or not designed, developed, or installed with assistance under such subparagraph) *which are approved by the Secretary....*

42 U.S.C. § 1396b(a)(3)(B) (emphasis added) (hereafter "subparagraph (B)"). The Secretary maintains that the subparagraph (B) phrase "which are approved by the Secretary" indicates that the Secretary must review and approve the operation of a fully installed MCPIRS system before a state is entitled to 75% FFP to pay for the state's MCPIRS operation costs. New York maintains that the approval to which the phrase "which are approved by the Secretary" is referring is the Secretary's approval of the MCPIRS's APD. We are dubious about the correctness of New York's interpretation of this phrase.

Subparagraph (B) states that the systems to which it is referring are "of the type described in subparagraph (A)(i)." As we noted above, subparagraph (A)(i) indicates that States are not entitled to 90% FFP for the design, development, and installation of systems until the Secretary

---

5. Though in its administrative appeal to DAB "New York argued that [WMS/NYC] was not subject to the review and certification requirements applicable to an [MCPIRS]," Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 6, New York seems to have abandoned this claim. Indeed, New York's entire statutory argument is that § 1396b is applicable to MCPIRS enhancements such as WMS/NYC, and that SMM § 11255 contradicts the

plain meaning of the statute. Moreover, even if New York had argued that the WMS/NYC is not subject to the review and the certification requirements applicable to an MCPIRS, we would still hold that WMS/NYC is subject to those requirements. The statute is silent about how to fund MCPIRS enhancements, and we believe that it is reasonable for the Secretary to fund MCPIRS enhancements identically to the way he funds MCPIRS's.

approves the state's APD. Thus, if we were to accept New York's assertion that the subparagraph (B) phrase "which are approved by the Secretary" indicates that subparagraph (B) is talking about systems whose APDs have been approved by the Secretary, the subparagraph (B) phrase "of the type described in subparagraph (A)(i)" would be rendered almost entirely superfluous; The subparagraph (B) phrase "which are approved by the Secretary" indicates that the systems about which subparagraph (B) is talking are those systems whose APDs have been approved by the Secretary. Under New York's interpretation of the phrase "which are approved by the Secretary", the only systems to which the phrase "of the type described in subparagraph (A)(i)" could refer are those systems that were not designed, developed, or installed with the Secretary's aid and approval, but satisfy the APD approval criteria listed in subparagraph (A)(i). Because New York's interpretation of subparagraph (B) renders the phrase "of the type described in subparagraph (A)(i)" almost entirely superfluous, we believe that New York's interpretation of the phrase "which are approved by the Secretary" is questionable. Cf. *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 293 (2d Cir.1992) (it is a "well-established principle that each word of a statute is to be given meaning and not rendered superfluous.").[6] In any event, because we find the Secretary's interpretation of 42 U.S.C. § 1396b to be consistent with the relevant language of that statute, we believe that the Secretary's assertion that a State may only receive 75% FFP for the operation of an MCPIRS after the Secretary has reviewed and approved of an MCPIRS's operation, is a permissible interpretation of the Act, and must therefore be upheld.[7]

New York maintains that even assuming, *arguendo*, that § 1396b requires the Secretary to review and approve an MCPIRS's operation before the MCPIRS is entitled to FFP at a 75% rate, the act does not permit the Secretary to fund the operation of MCPIRS at a 50% FFP rate. New York essentially contends that the Act only authorizes the Secretary to fund an MCPIRS at either a 90% FFP rate or a 75% FFP rate, and that if the Secretary is not funding an MCPIRS at a 75% FFP rate, the Secretary must fund the MCPIRS at a 90% FFP rate. *See* Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment at 10 n. 7. We disagree. We

---

6. New York and the Secretary disagree as to what the word "which" in the phrase "which are approved by the Secretary" in § 1396b(a)(3)(B) is referring. New York maintains that the phrase is referring simply to "systems," and that therefore the approval that § 1396b(a)(3)(B) is talking about is the Secretary's approval of systems' APDs. The defendants contend that the phrase is referring to "operation of systems," and that the phrase therefore clearly indicates that the Secretary must review and approve a system's operation before the system may be funded at a 75% FFP rate.

The court notes that one could argue that the phrase "which are approved by the Secretary" cannot refer to "operation of systems," because the word "operation" is singular while the word "are" indicates that the phrase is referring to a plural noun. However, even if the phrase is construed only to refer to "systems," the statute is ambiguous as to what that term "systems" includes; There is nothing in the language of the statute that supports New York's argument that the term systems only refers to a system's APD report and not to a system's operation. We find the language of the statute ambiguous. Because the Secretary's interpretation of § 1396b(a)(3)(B) is consistent with that section's language, we believe that the Secretary's interpretation of this section is permissible. Accordingly, for the reasons discussed in this footnote, and for the reasons discussed in the main body of this opinion, we hold that § 1396b(a)(3)(B) can be interpreted to mandate that the Secretary review and approve a system's operation prior to providing 75% FFP for the operation of the system at a 75% FFP rate.

7. New York argues, as it did before DAB, that the Maximus review, which consisted of a review of pilot sites of the WMS/NYC during its developmental phase, satisfied the requirement of system operational approval. Plaintiff's Memo. at 6 n. 5. This argument fails because it is explicitly premised upon New York's contention that HFCA must review systems by site. *Id.* As discussed, *infra* in sections IV(A), (C), the Secretary's interpretation of SMM § 11255 as requiring an entire system to be operative before a state is entitled to 75% FFP for the system's operation is proper. Thus DAB's requirement of system-wide review was reasonable, and the Maximus review cannot suffice to qualify New York for 75% FFP.

find nothing in the language of the act that supports this contention. Indeed, the fact that § 1396b(a)(7) indicates that the government must provide 50% FFP for miscellaneous administrative expenses not explicitly covered by the Act, supports the Secretary's assertion that the Act permits him to fund the operation of subsystems of a partially installed MCPIRS at a 50% FFP rate.[8] Moreover, though the language of the Act is not entirely clear, we believe that it is legitimate for the Secretary to interpret § 1396b(a)(3)(B) as only requiring the Secretary to provide New York with 75% FFP for the operation of a complete MCPIRS with all of its subsystems installed. *See* 42 U.S.C. § 1396b(a)(3)(B) ("75 per centum of so much of the sums expended ... as are attributable to the operation of systems ... which are approved by the Secretary....").

New York asserts that the Secretary defines the word "system" in § 1396b in two conflicting ways, *i.e.*, "terminating developmental funding as the [subsystems] are installed at each site, yet determining that the [system, *i.e.*, MCPIRS's,] cannot receive operational funding until [all of its subsystems are installed]." Plaintiff's Reply Memo at 6. New York maintains that because of this conflict, we should reject as internally inconsistent the Secretary's interpretation of the act. We decline New York's invitation. The Secretary does not terminate developmental and installational funding for a system as a whole when the State finishes installing one of the system's subsystems. Rather, the Secretary only stops developmental and installational funding for the fully installed subsystem.

Thus, the Secretary's definition of "system" is consistent. According to the Secretary, a system consists of all of its subsystems installed. Developmental and installational funding for a system as a whole does not stop until all of its subsystems are installed. Similarly, operational funding for a system does not begin until all of its subsystems are installed.[9]

New York next contends that the Secretary's interpretation of the Act is illogical because "[a] system is designed, then is developed, then is installed, then begins operating.... and there is no room for any additional phase to be sandwiched in between them." Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment. While we agree for the most part with New York about the sequence of an MCPIRS's creation and operation, we believe that the sequence of events described by New York is incomplete. A state may install an MCPIRS subsystem by subsystem, and until the state installs all of the MCPIRS's subsystems, the MCPIRS system will not be complete. However, the installed subsystems may perform useful functions prior to the state's installation of the entire MCPIRS. The possibility of an MCPIRS's installed subsystems performing useful functions before the entire MCPIRS is installed, demonstrates that New York's description of the stages of an MCPIRS's design and installation is incomplete.[10] Thus, the Secretary's recognition of a semi-operational stage and his decision to fund this stage at a 50% FFP rate is not illogical.[11]

8. Of course, to the extent that a state operates an MCPIRS's subsystems for design, development, and installation purposes, the state is entitled to 90% FFP.

9. Though both sides have cited the Act's legislative history to support their interpretations of the Act, we do not find the legislative history helpful in choosing between New York's and the Secretary's varying interpretations of the act.

10. We note that the Act is silent, or at best ambiguous, about the FFP rate the Secretary must use to fund the operation of an MCPIRS's subsystems before the entire MCPIRS system is installed. Thus, the Secretary's interpretation of the Act, which we have determined is permis-

sible construction of the Act, must be upheld. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (because the statute that the agency administered did not express Congressional intent on an issue, and because the agency's regulations were based on a permissible construction of the statute, the Court upheld the regulations).

11. New York's cites to the Secretary's definition of the words installation and operation, *see* 45 C.F.R. § 95.605 (1991) (incorporated by reference at 42 C.F.R. § 433.111(a) (1991)), to support its position that there is no room for a phase between installation and operation. We find New York's argument to be unpersuasive.

In the instant case, New York is installing the WMS/NYC site by site. Until all of the sites in the system are connected to one another, the WMS/NYC system will not be able to operate as a complete system. However, each node of the WMS/NYC performs useful functions before the entire WMS/NYC is installed. Thus, treating WMS/NYC as a system, and treating the individual sites of the WMS/NYC as subsystems,[12] the Secretary's decision to fund the operation of individual sites at a rate of 50% FFP before New York installs the entire WMS/NYC is consistent with the language of the act and must be upheld.

III. The Transition Funding Policy is Applicable to New York Because New York had Actual Notice that the Secretary was Using the Transition Funding Policy to Make Funding Decisions

■ New York contends that SMM § 11255 is not binding as a regulation on New York because the Secretary, in promulgating SMM § 11255, failed to follow the rule-making requirements set forth in the Administrative Procedure Act. Specifically, New York contends that the Secretary failed to publish a general notice of proposed rulemaking in the Federal Register, failed to give interested parties a chance to submit comments on the proposed rule, and failed to publish the substantive rule "not less than 30 days before its effective date." 5 U.S.C. § 553(b)-(d).

As far as the Secretary's failure to publish the regulation is concerned, it is well settled that "one who has actual notice of an unpublished regulation is bound by it even though the regulation was required to be published." *Appalachian Power Co. v. Train*, 566 F.2d 451, 456 (4th Cir.1977); *see Whelan v. Brinegar*, 538 F.2d 924, 927 (2d Cir.1976). In the case before us, the Secretary alleges, and New York does not deny, that the Secretary had by March 3, 1983 sent to all the States in the Union copies of SMM part 11 and had asked the States for comments on it. *See* 48 Fed.Reg. 9038, 9040. In 1985, after reviewing comments on SMM part 11, the Secretary adopted the proposed rule. *See* 50 Fed.Reg. 30,838 (July 30, 1985). HFCA disallowed New York's claims for 75% FFP from May 1988 to October 1990. Thus, it is apparent that before the Secretary applied SMM § 11255 to the WMS/NYC, New York received actual notice of this regulation, and was therefore bound by it.[13]

The regulation provides that the definition of installation "includes the use of hardware *to the extent necessary for the installation phase*." 45 C.F.R. § 95.605. Thus, the regulation makes clear that not all operation of hardware is embraced by the word installation.

Moreover, the word operation, according to the regulation, "includes the use of supplies, software, hardware, and personnel directly associated with the function of the mechanized system." What the regulation means by the phrase "function of the mechanized system" is not clear. However, the Secretary apparently interprets this phrase to mean the operation of the entire MCPIRS with all of its systems installed. Because, as we note in section IV(A) *infra*, an administrative agency's interpretation of its own regulation is entitled to substantial deference, and because we find the Secretary's interpretation of the phrase to be reasonable, *cf.* Section II above (accepting the Secretary's definition of the word system in § 1396b as a complete MCPIRS with all of its subsystems installed), we adopt the Secretary's definition. Thus, it becomes clear that the word operation does cover the period in which an MCPIRS's subsystems are functioning prior to the operation of the entire MCPIRS.

In sum, we do not find the definitions of installation and operation contained in 45 C.F.R. § 95.605 to support the Secretary's position that there is no room for a phase between installation and operation.

**12.** New York argues that each site should be considered its own system. However, for the reasons discussed section IV(C) *infra*, we do not agree with New York's position on this matter.

**13.** New York contends that "it is clearly unfair for HCFA to attempt to rely on its March 3, 1983 notice, since much of the planning and development of the WMS in the City had been completed by that time." Plaintiff's Response to Defendants' Motion for Summary Judgement. We disagree. First of all, SMM § 11255, by its terms, does not affect the rate of funding for the planning and development of MCPIRS's. *See* SMM § 11255 ("FFP at the 90% level is available for design, development, installation, or improvement of each subsystem in an approved complete system . . ."). Moreover, the Supreme Court has stated that " 'those who do business in a regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.' " *Connolly*

As far as interested parties' ability to comment on SMM § 11255, the fifty states, as noted above, were aware of the SMM § 11255 in March 1983, and had two years to provide the Secretary with their comments. The fact that other interested parties, who were not on actual notice of SMM § 11255, did not have an opportunity to comment on SMM § 11255, does not affect the applicability of SMM § 11255 to the WMS/NYC. *See Whelan,* 538 F.2d at 927 (implicitly holding that although parties besides the plaintiffs were not on notice of a regulatory change and therefore apparently could not comment on the change when it was proposed, the change was applicable to the plaintiffs because the plaintiffs had actual notice of it).

IV. **The Manner in Which the Secretary Applied the Transitional Funding Provision to the WMS/NYC was not Arbitrary and Capricious**

■ Under the Administrative Procedure Act, "[a] Court reviewing a decision made by an administrative agency shall 'hold unlawful and set aside agency findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Hudson Transit Lines, Inc. v. United States of America Interstate Commerce Comm'n,* 765 F.2d 329, 336 (2d Cir.1985) (quoting 5 U.S.C. § 706(2)(A) (1982)). The Supreme Court has stated that

[t]he scope of review under the "arbitrary and capricious" standard is narrow and the court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In review-

ing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing Court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (citations and quotation marks omitted); *see Hudson Transit Lines, Inc.,* 765 F.2d at 336. In the instant case, New York argues that even assuming that the transition funding provision is facially valid, the Secretary's application of SMM § 11255 to the WMS/NYC was arbitrary and capricious. Specifically, New York maintains that: 1) SMM § 11255 requires HFCA to fund an MCPIRS enhancement at 90% and 75% FFP so long as the enhancement does not disrupt the operation of the underlying MCPIRS; 2) having supplied 75% funding in upstate New York without a period of transition funding, the Secretary was obligated to do so in New York City; and (3) the Secretary must provide enhanced fund-

---

*v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 227, 106 S.Ct. 1018, 1027, 89 L.Ed.2d 166 (1986) (quoting *Federal Housing Authority v. Darlington, Inc.,* 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958)); *see also Wyoming Hosp. Assoc. v. Harris,* 727 F.2d 936, 940–41 (10th Cir.1984) (though regulations governing the conduct of hospitals accepting federal funds had changed after a hospital had accepted such funds, the hospital was required to comply with

the new regulations); *Armstrong v. Fairmont Community Hosp. Assoc., Inc.,* 659 F.Supp. 1524, 1533–35 (D.Minn.1987) (same). Therefore, the fact that the Secretary gave New York notice of SMM § 11255 on March 3, 1983, after New York had completed much of WMS/NYC's planning and development, does not in any way affect the applicability of SMM § 11255 to the WMS/NYC.

ing in as many increments as there are sites of a computer installation. We will discuss each of New York's contentions *seriatim.*

A. The Secretary Properly Applied SMM § 11255 When He Decided to Fund at 50% FFP the Operation of the Partially Installed WMS/NYC, and Would Not Fund WMS/NYC operations at 75% FFP Until New York Installed the Entire WMS/NYC Citywide

As noted above, the transition funding policy provides that "FFP at the 50–percent level is available for operation of any subsystem from that point that the 90–percent FFP ceases *until the complete system is fully operational.* ..." SMM § 11255 (emphasis added). New York asserts "that Since the WMS was approved as an enhancement to the MMIS and not as an independent mechanized claims processing and information retrieval system, the appropriate system to examine for purposes of the 'transition' funding policy was the MMIS as enhanced by the WMS—and not the WMS standing alone as an *independent* system." Plaintiff's Reply Brief at 11 (emphasis added). New York goes on to argue "that since the WMS was only an enhancement of the MMIS, and the MMIS unquestionably remained fully operational throughout the period at issue and used the data produced by the WMS at the operating sites, it was arbitrary and capricious for HCFA to apply the 'transition' funding policy to the WMS as an independent system and deny operational funding on the ground that the WMS was not operating at all sites Citywide." Plaintiff's Reply Brief at 11–12. In essence, New York maintains that when SMM § 11255 states that 50% FFP will continue *"until the complete system is fully operational,"* SMM § 11255 means that FFP of 50% will continue until

the underlying MCPIRS is completely installed and running. The Secretary asserts that the phrase *"until the complete system is fully operational"* means that the FFP of 50% will continue until the *complete* system, *i.e.,* the system with all the enhancements described in the APD installed, is operational. Thus, it is apparent that the key bone of contention between the Secretary and New York is the interpretation of the phrase *"until the complete system is fully operational"* in SMM § 11255.

> The Supreme Court has made clear
>
> that an agency's construction of its own regulations is entitled to substantial deference. In situations in which the meaning of [regulatory] language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations. Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers.

*Martin v. Occupational Safety & Health Review Comm'n,* —— U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991) (citations and quotation marks omitted). Because both New York's interpretation of SMM § 11255 and the Secretary's interpretation of SMM § 11255 are plausible, and because the law mandates that we treat with substantial deference the Secretary's interpretation of his own regulation, we do not find the Secretary's interpretation of SMM § 11255 to be arbitrary and capricious.[14] In sum, we hold that the Secretary

---

**14.** We note that some courts have held that "[a]n agency's interpretation [of its own regulations] is not entitled to great deference ... if it rests upon general common-law principles and not upon expertise within the agency's particular field." *Grossman v. Bowen,* 680 F.Supp. 570, 575 (S.D.N.Y.1988) (Secretary's interpretation of presumption-of-death regulation not accorded special weight because the regulation was based

on general common-law principles regarding presumption of death); *see Edwards v. Califano,* 619 F.2d 865, 868 (10th Cir.1980); *Jicarilla Apache Tribe v. Federal Energy Regulatory Comm'n,* 578 F.2d 289, 292–93 (10th Cir.1978) (When "interpreting the word 'purchase,' [which was contained in his agency's regulation,] the [Secretary] relied primarily on property concepts developed and enunciated by the common

properly applied SMM § 11255 when he decided to fund at 50% FFP the operation of the partially installed WMS/NYC, and would not fund WMS/NYC operations at 75% FFP until New York installed the entire WMS/NYC Citywide.[15]

### B. It was Within the Secretary's Power to Fund at 50% FFP the Operation of the Partially Installed WMS/NYC, Even Assuming the Secretary Never Funded Upstate WMS at 50% FFP

New York asserts that because the Secretary approved the operation of upstate WMS incrementally by site, and funded each site at 75% FFP as each site became operational, the Secretary's refusal to do so for WMS/NYC was arbitrary and capricious.[16] We disagree.

The Supreme Court has held that if an Administrative Agency changes its position on an issue, and "there appears to have been good reason for the change," the agency's new position is entitled to substantial deference. *See Robertson v. Me-*

*thow Valley Citizens Council,* 490 U.S. 332, 355–56, 109 S.Ct. 1835, 1848, 104 L.Ed.2d 351 (1989) (substantial deference was due to a regulation, which superseded a previous regulation, because there was a "well-considered basis for the change"); *National Labor Relations Bd. v. Local Union No. 103,* 434 U.S. 335, 351, 98 S.Ct. 651, 660–61, 54 L.Ed.2d 586 (1978) ("An administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue, *de novo* and without regard to the administrative understanding of the statutes."). In the case before us, the record indicates that the Secretary determined that the type of incremental approval he engaged in when he made funding decisions about upstate WMS was not a viable methodology to use when evaluating systems as complex as WMS/NYC. R. 938–39.[17] Therefore, it was well within the Secretary's discretion

law;" Therefore the Secretary's interpretation was not entitled to great deference.). In the instant case, the Secretary's interpretation of what constitutes a "complete system" within the meaning of SMM § 11255, is based upon his expertise in the health-care-claim-processing field. Neither side has contended that SMM § 11255 is based upon common law principles, and the Secretary has not used common law principles in support of his proposed interpretation of SMM § 11255. Therefore, we do not believe that the reasoning contained in *Grossman, Edwards,* and *Jicarilla* applies to this case.

15. The July, 1986 version of SMM § 11255 is the version that we quote in the text and that is discussed by the parties in their briefs. *See* Exhibit B to Defendant's Motion for Summary Judgment. The June 1990 version of SMM § 11255 provides that "FFP at the 50–percent level is available for operation of any subsystem *or enhancement* from that point that 90–percent FFP ceases until the complete system *or enhancement* is fully operational...." Exhibit C to Defendants' Motion for Summary Judgment (emphasis added). Given the addition of the words "or enhancement" to the text of the 1990 version, the 1990 version more clearly indicates than does the 1986 version that 50% FFP will continue until the state installs the entire MCPIRS.

16. The record seems to support New York's assertion that the Secretary never funded upstate WMS at 50% FFP. *See* R. 1123–24; 1279–82. The Secretary contends the contrary. *See* De-

fendant's Reply Brief at 16–17. Even assuming that the Secretary treated upstate WMS differently from WMS/NYC, we hold, for the reasons discussed below in the text of this opinion, that the Secretary's decision was not arbitrary and capricious.

17. DAB found that WMS/NYC required "modifications and enhancements different from Upstate WMS because of 'uniqueness of the city's size, caseload and labor unions.'" at 16 (quoting HCFA Hearing Ex. R–20, p. I–6). DAB also found that "states have varying needs, and each eligibility system is unique, and HCFA requires flexibility in reviewing them to insure that the objectives of the APD have been met." *See* R. 18. However, DAB never made clear how these facts justify the Secretary's difference in funding between WMS/NYC and upstate WMS.

DAB asserted in its opinion that "until the entire system was fully implemented at every site, [the Secretary] could not determine whether, for example, the hardware capacity and the communications network capacity were sufficient, nor whether there are differences between the sites which might need adjustment when the entire system is operational." R. 1477 (citing R. 1077–78). However, DAB never made clear whether these facts were true only of WMS/NYC or whether these facts were true of upstate WMS as well. Therefore, we cannot use these facts to justify the Secretary's different funding treatment of upstate WMS and WMS/NYC.

to change his funding policy when he funded WMS/NYC, and we cannot conclude that the Secretary's decision to make that change was arbitrary and capricious.[18]

### C. The Transition Funding Provision Reasonably Requires Review and Operation of the Entire WMS/NYC and Not Merely Component Sites

■ New York's final argument is that each of the 92 sites of the WMS/NYC can qualify as a "fully operational" system within the meaning of SMM § 11255, and that therefore, each WMS/NYC site met the requirements for 75% FFP as each site became operational. We disagree.

SMM § 11255 provides that 50% FFP terminates only when "the complete system is fully operational and meets the requirements of § 11210 [conditions of system operation approval]." As we noted above, the Secretary's definition of "complete system," as the system with all the enhancements described in the APD installed, is not arbitrary and capricious. *See* § IV(A) *supra.* Therefore, we accept the Secretary's interpretation of SMM § 11255.

New York's contention, at its core, is that because an individual WMS/NYC site is capable of operating and rendering bene-

fits to the MMIS independent of other sites, each site should be viewed as its own system. However, New York did not propose, nor did the Secretary agree to fund some working fractional portion of the WMS/NYC "whether or not installation was complete at all sites Citywide." Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 24. Rather, New York proposed in the APD, and the Secretary only agreed to fund an integrated, citywide system which would confer benefits on New York's administration of the Medicaid program. Until New York concluded installation of the WMS/NYC throughout the City, the Secretary could not determine whether the communications network capacity was sufficient, or "whether there are differences between the sites which might need adjustment when the entire system is operational." R. 13 (citing R. 1077–78). In short, the review of a particular site's operation was not sufficient to determine whether the entire citywide system was operational. Thus, the Secretary's decision to fund the WMS/NYC at 75% FFP only after New York installs the entire system citywide was not arbitrary and capricious.

New York argues that the transition funding policy, by its terms, only applies

---

**18.** New York asserts that "HCFA's denial of 75% FFP for the operating costs of the WMS in the City was arbitrary and capricious because of HCFA's inconsistent funding of systems in other states." Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 22 n. 14. However, New York points to nothing in the record to support its allegation that the Secretary funded other states' MCPIRS's differently than he funded WMS/NYC. Though New York has "reserve[d] the right to raise this issue after the completion of discovery," *id.,* discovery is inappropriate in this case. Ordinarily when a Court reviews agency action "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Moreover, the Supreme Court has made clear that

"[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agen-

cy for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). New York maintains that its opportunity to obtain information about the Secretary's treatment of other states was "limited." However New York has shown no evidence nor has it asserted that it tried to obtain this information from the Secretary, or that the Secretary denied New York access to this information. From the record before us, it appears that New York did not advance this theory below. To allow New York to raise this issue for the first time in this court would eviscerate the finality of DAB's determination in this case, and would encourage others not to litigate legal and factual issues in the first instance before DAB. Therefore, we will not permit New York's to conduct discovery on DAB's funding treatment of other states. In sum, we find the record developed before the Secretary sufficient to support the Secretary's funding decisions, and that neither discovery nor remand to HHS is warranted in this case.

"to a situation where one *subsystem* of a system is installed and operating before the other *subsystems* of the system are completed." Plaintiff's Memorandum in Support of its Motion For Summary Judgment at 26 (emphasis in original). New York then simply goes on to assert that an "[a]n office is not a subsystem," but a complete system, and that therefore, once a WMS/NYC site is up and running, the operation of the site was entitled to 75% FFP. We disagree.

The Secretary's definition of the word "subsystem" in SMM § 11255 apparently embraces a single site that is part of a larger system of interconnected sites. Though this may not be the only possible definition of "subsystem," we find this definition to be reasonable. Therefore, the Secretary's decision to fund the operation of individual WMS/NYC sites at 50% FFP until the entire WMS/NYC system is installed and interconnected must be upheld.[19]

We observe that New York, in order to support its position about the interpretation of the word "subsystem," has cited a dictionary definition of subsystem which provides that a subsystem is "any system that is part of a larger system; component system." Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 27 n. 16 (quoting *Webster's New World Dictionary of the American Language* (2d ed. 1984)). However, because an individual WMS/NYC site is part of a system of interconnected sites, this definition supports, rather than refutes the Secretary's assertion that an individual WMS/NYC site can be considered a subsystem.

In sum, we do not find the Secretary's decision to fund the operation of individual sites of the WMS/NYC at 50% FFP prior to the installation of the entire WMS/NYC to be arbitrary and capricious.

Conclusion

The Secretary's motion for summary judgment is granted, and New York's motion for summary judgment is denied.

SO ORDERED.

---

**19.** We note that SMM § 11310 states that "[t]he federally required MMIS [ ] consists of ... six core subsystems: recipient, provider, claims processing, reference file, surveillance and utilization review, and management and administrative reporting." Section 11310 does not limit the definition of the word "subsystem" to one of the six subsystems listed above, but rather lists the subsystems required by the federal government in every MCPIRS.